## BUTCHER *v.* TOWNSHIP OF GROSSE ILE

1. TAXATION—AD VALOREM TAXES—TOWNSHIPS—DRAINS.

   General *ad valorem* taxes in the amount of 2.88 mills levied by a township to help raise money required to pay a drain assessment were constitutional, even though the 2.88 mills was in excess of the maximum allocation of taxes allowable by the tax allocation board and had not been voted by the electors of the township, because the constitutional 15-mill tax limitation does not apply to taxes levied to discharge bonded indebtedness (Const 1963, art 9, § 6).

2. HEALTH—TOWNSHIPS—PUBLIC SANITARY SEWER.

   A township may require a property owner to connect to an available public sanitary sewer without finding that his existing sewage system is a health hazard because the legislature considers that where the population has reached a certain level in any county the continued use of private sewer systems, even if they were minimally adequate individually, would, in totality, create a health hazard (MCLA § 123.192).

3. DRAINS—SEWER SYSTEM—TOWNSHIPS—FRANCHISES.

   A drain district need not be granted a franchise by a township before it may enter and use the township's streets and other public places to construct a sewer system where that drain district is not a public utility conducting any local business requiring a franchise.

4. DRAINS—TOWNSHIPS—SEWER SYSTEM—PETITION.

   A township grants its consent to a drain district's use of the township's streets by filing a petition with the county drain commissioner in those cases where the public health necessitates the construction of a sewer system (MCLA § 280.463).

REFERENCES FOR POINTS IN HEADNOTES

[1] 51 Am Jur, Taxation § 51.
[2–4] 25 Am Jur 2d, Drains and Drainage Districts § 31 *et seq.*

Appeal from Wayne, Joseph G. Rashid, J. Submitted Division 1 May 15, 1969, at Detroit. (Docket No. 5,901.) Decided June 22, 1970. Leave to appeal granted November 24, 1970. 384 Mich 779.

Complaint by Robert E. Butcher and Gladys K. Butcher against the Township of Grosse Ile, Louis H. Funk, Wayne County Treasurer, Grosse Ile Sanitary Interceptor Drain & Treatment Plant Drainage District, and Wayne County, for moneys collected under the general ad valorem taxes or under the Township of Grosse Ile's sewer finance ordinance. Defendants' motion for summary judgment granted. Plaintiffs appeal. Affirmed.

*Robert E. Butcher,* for plaintiffs.

*Moll, Desenberg, Purdy, Glover & Bayer,* for Township of Grosse Ile.

*Miller, Canfield, Paddock & Stone (John H. Nunneley,* of counsel), for Grosse Ile Sanitary Interceptor Drain & Treatment Plant Drainage District.

*William L. Cahalan,* Prosecuting Attorney, *Aloysius J. Suchy* and *Lawrence O. Hinkle,* Assistant Prosecuting Attorneys, for the County of Wayne and Wayne County Treasurer.

Before: FITZGERALD, P. J., and LEVIN and T. M. BURNS, JJ.

T. M. BURNS, J. By this action plaintiffs seek the return of all identifiable moneys which were on hand on the date which this suit was instituted, October 16, 1967; or which have been collected since that date either under general *ad valorem* taxes or under the

provisions of the defendant township's sewer finance ordinance for the purpose of paying the annual assessment against the township by the drainage district. Further, plaintiffs seek to recover those moneys paid by the township to the other defendants prior to the institution of this action, which purports to be on behalf of the township's residents as a class.

There is no material issue of fact between the parties on appeal.

On July 30, 1964, a hearing was held in Lansing by the State Health Commissioner, who after consideration of the record made the following findings of fact:

"1. In 1956 representatives of the state and local health departments, by survey, found sewage being discharged into the waters of the State and creating health hazards.

"2. Pursuant to the provisions of the State drain law, the state health commissioner filed with the Michigan Water Resources Commission his findings of health hazards in the Township of Grosse Ile.

"3. In February 1957, the Water Resources Commission petitioned the Wayne County drain commissioner to take appropriate steps to eliminate the pollution.

"4. The Wayne County drain commissioner followed the provisions of the State drain law to eliminate the pollution of the waters of the state in and around the Township of Grosse Ile. The drain commissioner could not complete the project, however, because the township board did not adopt a resolution pledging the full faith and credit of the Township behind the financing for the necessary sewage collection and treatment facilities.

"5. A survey conducted jointly by representatives of the Michigan Department of Health and the Wayne County Health Department on July 20, 21, and 22, 1964, of sewers discharging to the Through-

fare Canal and other public waters around Grosse
Ile clearly confirm that wastes of human origin
are being discharged and that health hazards exist.

"6. Sewage is ponding on the ground surface in
the yards of homes and also in roadside channels
and ditches because septic tank sewage disposal
systems cannot function properly. It is clear that
health hazards result from such conditions.

"7. House sewer connections are either made di-
rectly or after passing through a septic tank to pri-
vate drains or county drains which in turn discharge
either untreated or inadequately treated sewage to
public waters in and around Grosse Ile Township,
thereby causing unlawful pollution of the waters
of the state and creating health hazards.

"8. The Township of Grosse Ile is responsible for
the control and operation of at least three existing
sewerage systems.

"9. There was no evidence submitted by either the
Wayne County drain commissioner, the Grosse Ile
Interceptor Drainage Board, or the Township of
Grosse Ile to show that pollution of the waters of
the state was not occurring or that health hazards
do not exist due to improper sewage disposal in the
Township of Grosse Ile.

"10. Certain township officials objected to cor-
recting existing conditions solely on the basis that
the proposed facilities were too costly.

"11. It is clear that the facilities proposed for con-
struction by the Wayne County drain commissioner
would eliminate, in most instances, the conditions
of pollution and health hazards. Further, the facil-
ities would provide means for correcting any remain-
ing pollution conditions and health hazards.

"12. Recognized bond counsel and financial con-
sultants have rendered opinions that the proposed
sewage collection and treatment facilities are finan-
cially feasible and not confiscatory.

"13. It is clear that there is no unanimity of opin-
ion amongst the members of the township board as

to action which should be taken in connection with the proposed sewerage project.

"14. It is evident that there is much support for the proposed sewerage project from residents in the Township of Grosse Ile.

"15. Section 10 of Act 98, PA 1913, as amended, requires, among other things, the State health commissioner to inspect sewerage systems or parts thereof serving the public and likewise the manner of operation of such systems. If he finds the sewerage systems to be inadequate or so operated as not to adequately protect the public health, he may order the owner .and/or the operator to make such alterations in the system or its operation which, in his opinion, is required in order that the sewage be not prejudicial to the public health. This section provides further that it shall be the duty of the owner or operator of the system to comply with the orders of the State health commissioner.

"16. Section 11 of Act 98, PA 1913, as amended, requires the State health commissioner to exercise due care to assure that sewerage systems are properly planned, constructed and operated so as to prevent unlawful pollution of the streams, lakes and other water resources of the State.

"17. Section 2 of Act 98, PA 1913, as amended, defines a sewerage system as including, among other things, ' * * * channels * * * actually used or intended for use by the public for the purpose of collecting, conveying, transporting, treating or otherwise handling sanitary sewage.' "

As a result of these findings and pursuant to his authority under MCLA § 325.210 (Stat Ann 1969 Rev § 14.420), the State health commissioner on August 14, 1964, issued an order that the facilities were to be constructed as approved and that they were to be completed by March 1, 1966.

On September 21, 1964, in compliance with the health commissioner's order and after noting that

on September 25, 1963, a petition pursuant to MCLA § 280.463 (Stat Ann 1968 Rev § 11.1463) had been filed to establish a drain district and that the drainage board had assessed 100 per cent of the cost of construction of the proposed project against the township and that the drainage board had authorized and provided for the issuance of bonds to finance the project, the Wayne County board of supervisors by resolution pledged the full faith and credit of the county to back the bonds.

Since 1965, Grosse Ile Township has levied general *ad valorem* taxes in the amount of 2.88 mills to help raise the money required to pay the assessment. This 2.88 mills is in excess of the maximum allocation of tax fixed by the tax allocation board and has not been voted by the electors of Grosse Ile Township.

Construction was completed in 1966 and Grosse Ile Township, to supplement the money raised by *ad valorem* taxes, passed a sewer finance ordinance. The charges set forth in the ordinance were based on MCLA § 280.490 (Stat Ann 1968 Rev § 11.1490).

The charges imposed by the ordinance are direct benefit connection charge, availability of service connection charge, readiness to serve charge, service charge, and sewage disposal charge. The ordinance also requires that premises be connected to the public sanitary sewer. The availability of service charge has been discontinued.

Plaintiffs, who are residents of Grosse Ile Township, contend that the 2.88 mills levied by the township is prohibited by Const 1963, art 9, § 6, that the township's sewer finance ordinance imposes charges not authorized by MCLA § 280.490 (Stat Ann 1968 Rev § 11.1490) and that the ordinance is discriminatory. Plaintiffs also contend the ordinance cannot require them to connect to an available

sewer unless their septic tank is specifically found to be a health hazard and that an illegal franchise has been granted the drainage district.

It is the position of the defendants that the millage levied by Grosse Ile Township comes within the provisions of the non-application of limitation part of Const 1963, art 9, § 6, that the provisions of the sewer finance ordinance are valid and that no franchise has been, or need be, granted to the drainage district.

Plaintiffs and defendant both filed motions for summary judgment and the motions came on for hearing before the trial court. After hearing arguments of counsel and considering the briefs filed by the parties, the trial court rendered a written opinion granting appellees' motion for summary judgment of dismissal and a judgment to that effect was entered July 1, 1968. It is from this judgment that plaintiffs appeal.

Although plaintiffs seek to multiply the issues on appeal, there are only five issues before the court for disposition.

*May Grosse Ile Township levy annually the* ad valorem *taxes necessary to pay assessment installments and interest levied against it by a drainage district board for the payment of principal and interest due on drainage bonds issued by the drainage district board in anticipation of the payment of said installments and interest by Grosse Ile Township?*

We find that although plaintiffs' contentions as regards the 15 mill tax limitation would be correct if we were still acting under Const 1908, art 10, § 21 (See *Township of Southfield* v. *Drainage Board for Twelve Towns Relief Drains* [1959], 357 Mich 59), under the present constitutional provision, Const 1963, art 9, § 6, however, the limitation does not

apply to taxes levied to discharge bonded indebtedness. 10 Wayne L Rev 358 (1963).

The language of the provision is unambiguous:

"The foregoing limitations shall not apply to taxes imposed for the payment of principal and interest on bonds or other evidences of indebtedness or for the payment of assessments or contract obligations in anticipation of which bonds are issued, which taxes may be imposed without limitation as to rate or amount." Const 1963, art 9, § 6.

We reiterate what was said in *Betz v. Berrien County Building Authority* (1968) 12 Mich App 304, 312, "(t)he language is applicable to the situation here. The [township] is, thus, authorized to levy annually such ad valorem taxes as may be necessary to meet its obligations to the [drain district] under the contractual arrangements of the parties". Thus, what was prohibited under the old constitution is clearly allowed under the new. The township's levying of the additional 2.88 mills to meet the assessments levied against it by the drain district is proper and was properly sustained by the trial court.

*Are the charges imposed by the Grosse Ile Township sewer finance ordinance authorized by* MCLA § 280.490 (Stat Ann 1968 Rev § 11.1490)?

The plaintiffs' contention on this issue is that the 1965 amendments to MCLA § 280.490 (Stat Ann 1968 Rev § 11.1490) which allow the special assessments, connection charges, readiness to serve charge, and availability service charges cannot be used to validate the township's ordinance as the sewer assessment roll was confirmed prior to their passage.

In support of this argument, plaintiffs quoting from MCLA § 280.490 (Stat Ann 1968 Rev § 11.1490) say: "This section shall be applicable only where

the drain assessment roll is confirmed, subsequent to the effective date of this section". The plaintiffs consider that this quoted portion of the section applies to and limits the application of the 1965 amendments added by PA 1965, No 253. The fallacy of this argument is that the quoted language has been part of § 490 since it was added to the drain code by PA 1957, No 37. We find that it has no bearing on the 1965 amendments. The charges imposed under the township sewer finance ordinance against plaintiffs' property are proper under § 490 of the drain code.

*May the Township of Grosse Ile require a property owner to connect to an available public sanitary sewer system without a specific finding that his existing sewage system is a health hazard?*

Section 3 of article 2 of the house leads ordinance adopted October 11, 1965, requires everyone to connect to the new public sewer system within one year from the time they are available for connections. This ordinance provision is authorized under regulations of the Wayne County Health Department.

In any event, since it has been over two years since the sewer became available, the plaintiffs are under a statutory duty to connect under MCLA § 123.192 (Stat Ann 1970 Cum Supp § 5.2767[102]). That section is part of PA 1961, No 151 known as the sewage connection with public collection facilities act which further, by its § 4, MCLA § 123.194 (Stat Ann 1970 Cum Supp § 5.276[104]), declares that if no connection is made within 90 days of a written demand sent under § 3, MCLA § 123.193 (Stat Ann 1970 Cum Supp § 5.2767[103]), the property is a threat to the health, safety and welfare and a public nuisance. Section 4 authorizes the operator of the sewer facility to enter upon such

property and make all connections necessary in its discretion to abate the nuisance.

The statute does not require that the plaintiffs' particular private septic system be found to be creating a health hazard, or be otherwise specially inadequate. We note that § 2 of the sewage connection act applies only to property in counties with more than 300,000 inhabitants. Certainly then, it is reasonable and proper for this court to assume that the legislature considered that where the population reached a certain level in any county the continued use of private sewer systems, no matter that they may be minimally adequate individually, would, by their totality, create a health hazard.

The legislature has exercised its power to protect the health of the people of this state in a reasonable manner. We see no reason to further delay the implementation of this laudable legislation.

*Is the drain district conducting a local business which requires a franchise from Grosse Ile Township by the operation of the sewer system in said township?*

The plaintiffs contend that Const 1963, Art 7, §§ 19, 29, 30 require that the drain district be granted a franchise by the township before it may enter and use the township's streets and other public places to construct its sewer system. The plaintiffs further contend that since no franchise was ever confirmed by the electors of defendant township, the sewer system was illegally constructed.

There is no doubt that if a confirmed franchise is required to construct the sewer system, then the drain district is not properly using the township's streets, for no confirming vote by the electors under MCLA § 460.102 (Stat Ann § 22.172) has ever been taken.

However, we find that the drain district here is not a public utility conducting any local business which would require a franchise. Certainly, the sewer system serves the public and is, therefore, a public utility in the ordinary sense of the word. This does not necessarily mean, however, that the sewer system is a public utility such as to require a franchise under the laws of this state. See *Oakland Drain Com'r* v. *City of Royal Oak* (1943), 306 Mich 124, 147. The procedure by which a township grants its consent to the use by a drain district of its streets is clear. When, as here, it is necessary for the public health to construct a sewer system, PA 1956 No 40, § 463, MCLA § 280.463 (Stat Ann 1968 Rev § 11.1463), provides for the filing of a petition with the county drain commissioner signed by the public corporations which will be subject to assessment for the costs. The petition which is required to be filed under § 463 must contain a description of the location and route of the proposed drain and must have attached a certified copy of a resolution of the governing body of each public corporation authorizing the signing of said petition. Since the drain here is entirely within the limits of Grosse Ile Township, PA 1956, No 40, § 486, MCLA § 280.486 (Stat Ann 1968 Rev § 11.1486), allows the governing body of the township to give its consent to the filing of a petition under § 463 by resolution.

As noted earlier, there is no dispute that such a petition was filed pursuant to § 463 by the township on September 25, 1963. By this petition, and its underlying resolution, the township gave its consent to the drain districts' use of the public highways and byways as necessary for the construction and maintenance of the sewer system. No further authorization is necessary.

The general legislation, PA 1909, No 266 (MCLA §§ 460.101, 460.102 [Stat Ann §§ 22.171, 22.172]) upon which plaintiffs rely has no application here because of the specific legislation, PA 1956 No 40, §§ 463, 486. When the 1963 Constitution was approved, it was already the law that the consent of a township to the use of its public ways by a drain district was not to be given by franchise but by the resolution which authorized the signature of the petition for the formation of the drain district. Nothing in the new constitution has changed this procedure.

The drain district is not conducting a local business which would require a franchise. Since a public health question is involved, the legislature had a right to indicate what type of procedure it wished to be used. See *Southfield* v. *Drainage Bd. supra,* 78. We find that since the petition procedures established by the drain code were followed by the township here no further consent is necessary.

*Is this a proper class action under GCR 1963, 208?*

Having already disposed of the substantive issues in this cause, this procedural matter becomes somewhat moot. We see no reason to decide whether or not this action was properly characterized as a class action. However, we do not share defendants' view that plaintiffs' representation of the property-owning taxpayers class is necessarily inadequate because there are just the two of them.

Affirmed. No costs, a public question being involved.

FITZGERALD, P. J., concurred.

LEVIN, J., concurred in the result only.