DYKSTRA v DEPARTMENT OF NATURAL RESOURCES

Docket No. 139567. Submitted December 2, 1992, at Grand Rapids. Decided March 1, 1993, at 10:20 A.M.

Daniel and Barbara Dykstra and others who entered into development rights agreements under the Farmland and Open Space Preservation Act, MCL 554.701 *et seq.*; MSA 26.1287(1) *et seq.*, brought an action in the Barry Circuit Court against the Department of Natural Resources, seeking a declaration concerning the validity of 1979 AC, R 554.743, promulgated by the defendant, which concerns the circumstances under which the agreements may be terminated before their expiration dates. The rule requires proof that continued enrollment in the agreements imposes continuing economic inviability causing hardships through the prevention of necessary improvements to the land because of the restrictions in the agreements. The court, Thomas S. Eveland, J., granted summary disposition for the plaintiffs, finding the rule to be invalid and enjoining the defendant from implementing the rule. The defendant appealed.

The Court of Appeals *held:*

Where an agency is empowered to make rules, the validity of the rules is determined by a three-part test: whether the rules are within the subject matter of the enabling statute; whether they comply with the legislative intent underlying the enabling statute; and whether they are arbitrary or capricious. 1979 AC, R 554.743 is valid under this test.

Reversed.

1. ADMINISTRATIVE LAW — AGENCY RULES — APPEAL.

Courts employ a three-part test to determine the validity of a rule promulgated by an administrative agency: whether the rule is within the subject matter of the enabling statute; whether it complies with the legislative intent underlying the enabling statute; and whether it is arbitrary or capricious.

REFERENCES

Am Jur 2d, Administrative Law §§ 92, 277, 296 *et seq.*
See ALR Index under Administrative Law.

2. ADMINISTRATIVE LAW — FARMLAND AND OPEN SPACE PRESERVATION ACT — DEVELOPMENT RIGHTS AGREEMENTS.

The administrative rule promulgated by the Department of Natural Resources concerning the circumstances under which a development rights agreement under the Farmland and Open Space Preservation Act may be terminated before its expiration date is within the subject matter of the act, complies with the legislative purpose underlying the act, and is not arbitrary or capricious (1979 AC, R 554.743; MCL 554.701 *et seq.*; MSA 26.1287[1] *et seq.*).

*Rhoades, McKee, Boer, Goodrich & Titta* (by *Dale W. Rhoades* and *Laurie M. Strong*), for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Thomas J. Emery* and *Kevin T. Smith,* Assistant Attorneys General, for the defendant.

Before: HOOD, P.J., and NEFF and REILLY, JJ.

HOOD, P.J. This is an action for a declaratory ruling concerning the validity of an administrative rule. The trial court granted summary disposition in plaintiffs' favor, finding the rule invalid. Defendant appeals as of right. We reverse.

Plaintiffs, all of whom own farms, entered into development rights agreements under the Farmland and Open Space Preservation Act, MCL 554.701 *et seq.*; MSA 26.1287(1) *et seq.* They seek to terminate those agreements before their expiration dates, presumably so that they can sell the land to private developers.[1] Plaintiffs challenge the validity of a rule promulgated by defendant pursu-

---

[1] All but the Dykstra plaintiffs have failed to submit the termination applications required by the statute. The Dykstras' application was approved by the local governing body but apparently no action has been taken upon it by defendant. This action is not an appeal from an administrative ruling, but only a request for declaratory relief.

ant to the act, 1979 AC, R 554.743 (Rule 43), which would require them to prove that continued enrollment in the agreements "imposes continuing economic inviability causing hardships through the prevention of necessary improvements to the land . . . because of the restrictions in the agreement . . . ."

Where, as here, an agency is empowered to make rules, the validity of those rules is to be determined by a three-part test: (1) whether the rule is within the subject matter of the enabling statute; (2) whether it complies with the legislative intent underlying the enabling statute; and (3) whether it is arbitrary or capricious. *Luttrell v Dep't of Corrections,* 421 Mich 93, 100; 365 NW2d 74 (1984); *Binsfeld v Dep't of Natural Resources,* 173 Mich App 779, 785-786; 434 NW2d 245 (1988).

Plaintiffs successfully argued below that Rule 43 violates all three prongs of this test. We disagree.

The Farmland and Open Space Preservation Act is a scheme to encourage farmland owners, and others not relevant to this case, to refrain from developing their lands. Under the statute, an owner may enter into a development rights agreement with the state promising not to develop the land in exchange for relief from local tax laws. See MCL 554.702(4); MSA 26.1287(2)(4); MCL 554.704-554.705; MSA 26.1287(4)-26.1287(5); see also MCL 554.710; MSA 26.1287(10). According to the legislative history, the goal of the favorable tax treatment is to reduce the financial pressures that may otherwise force an owner to sell the land to a developer.

Section 12(2) of the act provides:

A development rights agreement may be relinquished by the state before a termination date contained in the instrument as follows:

(a) At any time the state determines that the development of the land is in the public interest and in agreement with the owner of the land.

(b) The owner of the land may submit an application to the local governing body having jurisdiction under this act requesting that the development rights agreement be relinquished. [MCL 554.712(2); MSA 26.1287(12)(2).]

If an early termination is accomplished under subsection a, there is no resulting penalty. MCL 554.712(6); MSA 26.1287(12)(6). However, if the termination is accomplished under subsection b, the tax savings realized under the agreement must be yielded and become a lien against the property, with penalty interest. MCL 554.712(4); MSA 26.1287(12)(4).

Rule 43(1) provides:

In reviewing a termination application [submitted under subsection b, above] . . . the local governing body or the state land use agency [defendant] shall consider:

(a) That the agreement or easement imposes continuing economic inviability causing hardships through the prevention of necessary improvements to the land. Economic inviability consists of continued uneconomic operation because of the restrictions in the agreement or easement and not merely the existence of uses of the land that allow higher returns.

(b) Surrounding conditions impose physical obstacles to the agricultural operation or prohibit essential agricultural practices.

(c) Significant natural physical changes in the land which are generally irreversible in nature and permanently affect the land.

In testing the validity of Rule 43, the first question that must be addressed is whether the rule is within the subject matter of the statute. *Luttrell,*

*supra* at 100. The act concerns agreements not to develop specified lands. The rule concerns circumstances under which those agreements may be terminated before their expiration dates. Contrary to the trial court's conclusion, we find that the rule is clearly within the subject matter of the act.

The second question is whether the rule complies with the underlying legislative purpose. *Id.* To answer this question, we find it necessary to review the legislative scheme more closely and to ascertain the plain meaning of the statute.

As noted before, early termination may be accomplished either by agreement between the owner and the state that development is in the public interest or by application to the local governing body. MCL 554.712(2); MSA 26.1287(12)(2). An application for early termination is to be submitted on a form prescribed by the state and shall be processed and reviewed under the provisions of § 5 of the act. MCL 554.712(2)(b); MSA 26.1287(12)(2)(b). That section sets out the procedures to be followed in making an application to enter into a development rights agreement. MCL 554.705; MSA 26.1287(5).

Section 5 provides that the local governing body, after considering the comments and recommendations of other agencies, shall approve or reject an application "based upon, and consistent with, rules promulgated by the state land use agency pursuant to section 17." MCL 554.705(4); MSA 26.1287(5)(4). Section 17 is the statutory provision that grants rule-making authority to defendant. MCL 554.717; MSA 26.1287(17). If an application is *approved* by the local governing body, the state land use agency may reject it *only* if the land does not meet the statutory definition of "farmland." MCL 554.705(7); MSA 26.1287(5)(7); see also MCL 554.702(6); MSA 26.1287(2)(6). On the other hand,

if an application is rejected by the local governing body, the state may reverse that determination upon unspecified grounds. MCL 554.705(7); MSA 26.1287(5)(7).

The trial court found that Rule 43 failed to comply with the underlying legislative intent by injecting conditions for the approval of early termination applications. The court found that the statute did not allow defendant to decide under what conditions an application for early termination would be approved. We disagree.

First, we note that if the Legislature had intended that these agreements would be terminable at the will of the landowners, it would have said so. It did, for example, expressly limit defendant's ability to overturn the approval of an application by a local governing body. See MCL 554.705(7); MSA 26.1287(5)(7). However, it did not provide that agreements could be terminated at will.

We also note that failure to meet the definition of "farmland" is the only reason specified by the statute for reversing an approval granted by a local governing body. See MCL 554.705(7); MSA 26.1287(5)(7). Failure to meet this definition is obviously not meant to be a reason for refusing to allow the termination of an agreement, in effect locking the parties into an agreement that should never have been approved. It is instead meant to prevent agreements from being improperly entered into in the first instance.

Therefore, we agree that where a governing body approves an early termination application, defendant lacks the statutory power to reverse that decision. Conversely, Rule 43 defines the grounds upon which defendant may reverse a refusal by a local governing body to approve a termination application. We note that this incon-

sistency is for the Legislature, not this Court, to resolve.

Second, the Legislature did state in plain terms that local governing bodies shall approve or reject an application "based upon, and consistent with" defendant's rules. MCL 554.705(4); MSA 26.1287(5)(4). This phrase would have no meaning if defendant were not allowed to make any substantive rules.[2] See MCL 554.705; MSA 26.1287(5). Two cardinal rules of statutory construction require that the plain meaning of this phrase not be ignored and further require that no part of the statute be rendered meaningless.

Arguably, then, the plain meaning of the statute favors the interpretation advocated by defendant that the Legislature granted it authority to define the circumstances under which early termination applications should be approved. At a minimum, the plain meaning of the statute does not require the interpretation urged by plaintiffs that early termination applications must always be approved or, alternatively, that the discretion to approve them is vested exclusively in the local governing bodies. Therefore, in order to resolve the matter, we turn to the legislative history.

According to the legislative history, the purpose of the statute was to preserve farmlands and open spaces in order to prevent food shortages, ecological damage, and damage to the state's economy. The act achieves these goals by allowing owners of farmlands and open spaces to apply for lower taxes in exchange for agreements to refrain from developing the land.

A report prepared by the Legislative Analysis Section of the House of Representatives briefly

---

[2] The statute itself sets out the procedure to be followed in making an application so that the grant of rule-making authority would be meaningless if it was limited to the power to make procedural rules.

addresses the early termination of development rights agreements. The report states that an agreement may be terminated early without penalty if the parties agree that development of the land is in the public interest. Otherwise, an agreement may be terminated early by application to, and approval by, the local governing body. The resulting penalties are then discussed.

The legislative history does not address whether agreements are terminable at will, or at the discretion of local bodies, or whether the agency's rule-making powers include the power to set standards for termination. However, we believe that the legislative history does evidence an intent to find a statewide solution to potential statewide problems such as food shortages, ecological damage, and damage to the state's economy.

We believe that there would be no consistency across the state if each local agency were free to decide whether to approve or reject a termination application on the basis of its own criteria or no criteria at all. Lack of consistency and uniformity would undermine the effectiveness of the Legislature's solution to the statewide problems addressed by the act. We again note that once a local agency decides to approve a termination application, the statute does not allow defendant to reverse that decision. See MCL 554.705; MSA 26.1287(5). Although total consistency is therefore impossible, Rule 43 imposes some consistency at the local level by providing standards by which the state, and the courts, can review denials of early termination applications.

Additionally, we note that there has been legislative acquiescence to the interpretation adopted by defendant. The doctrine of legislative acquiescence "is based on the assumption that the Legislature is aware of prior interpretations of its acts,

and that the construction given a statute by those charged with its execution is likely to be the most accurate." *Luttrell, supra* at 105. "[L]egislative silence in the face of an agency's construction of a statute 'can only be construed as consent to the accuracy of that interpretation.' " *Id.,* quoting *Magreta v Ambassador Steel Co (On Rehearing),* 380 Mich 513, 520; 158 NW2d 473 (1968).

The Farmland and Open Space Preservation Act was adopted in 1974. Rule 43 was promulgated in 1975. Since then, the act has been amended at least eight times.[3] None of these amendments address Rule 43 or the question whether defendant may properly impose conditions for early termination. "By its silence, the Legislature has acquiesced in the department's consistent and longstanding construction of its powers." *Luttrell, supra* at 106.

In sum, we find that Rule 43 complies with the legislative intent expressed in the act. We thus move on to the last prong of the *Luttrell* test, that is, whether the rule is arbitrary or capricious.

The trial court found that "the rule permits the arbitrary and capricious exercise of power [because no] standards are suggested by the rule [concerning] how economic inviability should be measured." The court found that the lack of standards allowed too much interpretive discretion to local bodies and therefore was open to discriminatory application. We note that this interpretation is inconsistent with plaintiffs' position that local bodies should be able to approve early termination applications with no restrictions. We also note that the natural consequence of adopting plaintiffs' position would be to provide no standards by

---

[3] See 1975 PA 236; 1976 PA 378; 1976 PA 78; 1978 PA 578; 1980 PA 133; 1980 PA 148; 1982 PA 159; 1986 PA 160; 1988 PA 423; 1991 PA 89; 1991 PA 112.

which defendant or the courts could review denials of termination applications.

A rule is arbitrary if it was "fixed or arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances, or significance." *Binsfeld, supra* at 786; *Nolan v Dep't of Licensing & Regulation,* 151 Mich App 641, 652; 391 NW2d 424 (1986). A rule is capricious if it is "apt to change suddenly [or is] freakish or whimsical." *Binsfeld, supra* at 786; *Nolan, supra* at 652. If a rule is rationally related to the purpose of the statute, it is neither arbitrary nor capricious. *Binsfeld, supra* at 787; *Nolan, supra* at 652. Further, "[i]f there is any doubt as to the invalidity of a rule in this regard, the rule must be upheld." *Thomas Bros, Inc v Secretary of State,* 90 Mich App 179, 188; 282 NW2d 273 (1979).

Rule 43 requires a showing that an agreement is imposing economic hardship before early termination is authorized. We find that it is rationally related to the Legislature's purpose to help prevent development of farmlands and open spaces. By not allowing rescission of an agreement at will in response to lucrative offers from developers, the rule enforces the bargain of the parties to refrain from developing the land in exchange for tax relief. The rule is also rational in that it allows rescission in cases of economic hardship or where farming is no longer feasible.

The cases cited by plaintiffs requiring that very specific standards be spelled out in the rule are inapposite. See *Osius v St Clair Shores,* 344 Mich 693; 75 NW2d 25 (1956); *Roseland Inn, Inc v McClain,* 118 Mich App 724; 325 NW2d 551 (1982); *Stafford's Restaurant of Bloomfield, Inc v West Bloomfield Twp Bd,* 82 Mich App 607; 267 NW2d 461 (1978). These cases all involve constitutional

challenges in situations where there were literally no standards provided. For example, *Osius* dealt with the doctrine of delegation of powers in the context of a zoning ordinance and found that the lack of standards, in effect, constituted an impermissible delegation of the power to legislate. 344 Mich 698-700. *Roseland Inn* dealt with a denial of due process in the revocation of a liquor license where there were no standards for such revocation. 118 Mich App 729-732. *Stafford's* found a rule restricting the number of liquor licenses in a mall impermissibly vague where it had not been properly promulgated and where there was no evidence to justify its adoption. 82 Mich App 613-614.

Here, although plaintiffs initially claimed that Rule 43 was unconstitutional, the trial court ruled against them in that regard, and plaintiffs did not cross appeal. Thus, despite being addressed in plaintiffs' brief, no constitutional claim is properly before us. Additionally, Rule 43 defines economic inviability as "continued uneconomic operation because of the restrictions in the agreement or easement and not merely the existence of uses of the land that allow higher returns" and thus provides some standards to be followed.

Further, "an administrative agency need not always promulgate rules to cover every conceivable situation before enforcing a statute." *Total Petroleum, Inc v Dep't of Treasury,* 170 Mich App 417, 421-422; 427 NW2d 639 (1988); *DAIIE v Comm'r of Ins,* 119 Mich App 113, 117; 326 NW2d 444 (1982). "Specifically, an administrative agency may announce new principles through adjudicative proceedings in addition to rule-making proceedings." *Id.* at 117. That is:

Not every principle essential to the effective administration of a statute can or should be cast

immediately into the mold of a general rule. Some principles must await their own development, while others must be adjusted to meet particular, unforeseeable situations. [*Id.* at 117, quoting *Securities & Exchange Comm v Chenery Corp,* 332 US 194, 202; 67 S Ct 1575; 91 L Ed 1995 (1947).]

Plaintiffs' argument that the rule is arbitrary and capricious because it does not address every conceivable issue related to financial inviability is without merit. The meaning of the phrase "economic inviability," beyond the "continued uneconomic operation" described in the rule, can be fine-tuned through defendant's adjudicative experience.

Reversed.