LAKE ISABELLA DEVELOPMENT, INC v VILLAGE OF LAKE ISABELLA

Docket No. 247156. Submitted October 8, 2003, at Lansing. Decided November 13, 2003, at 9:05 A.M.

Lake Isabella Development, Inc., sought to develop lakefront property in the village of Lake Isabella for single-family dwellings. The proposed dwellings were to be served by a sewage system to be built and operated by the developer. Village approval of the proposed development did not include the adoption of a village resolution stating that the village would assume responsibility for the continued operation and maintenance of the proposed sewage system if the developer failed to do so. The Michigan Department of Environmental Quality (DEQ) refused to grant the developer a construction permit for the proposed sewage system. Denial was based on 1999 AC, R 299.2933 (Rule 33), which in part requires that when the owner of a proposed sewage system is not a governmental agency, the application for a permit shall include a resolution from the local governmental agency having jurisdiction stating that the governmental agency shall assume responsibility for the effective and continued operation and maintenance of the proposed sewage system if the owner fails to do so. The developer brought an action in the Isabella County Trial Court against the village and the DEQ, in part seeking a declaration that Rule 33, to the extent that Rule 33(4) requires the resolution described above, is invalid. On motions by the plaintiff and the DEQ for summary disposition, the court, William T. Ervin, J., granted summary disposition for the plaintiff and declared Rule 33(4) invalid. The DEQ appealed by leave granted.

The Court of Appeals held:

1. The validity of an administrative rule is determined under a three-part test: (1) whether the rule is within the subject matter of the enabling statute; (2) whether it complies with the legislative intent underlying the enabling statute; and (3) whether it is arbitrary or capricious.

2. Rule 33 is within the subject matter of the DEQ's enabling statute, MCL 324.99903.

3. Rule 33 does not comport with the legislative intent underlying the DEQ's enabling statute. Rule 33 effectively confers on municipal-

ities indirect veto power in contravention of a grant of exclusive jurisdiction to the DEQ over sewage construction permits. Rule 33 also imposes a new burden on municipalities to assume responsibility for the effective and continued operation and maintenance of private sewage systems if the owners of those systems fail to do so. The imposition of such burden is not an appropriate method of enforcement.

4. Rule 33 is arbitrary and capricious because it constitutes an unlawful delegation of discretionary power to municipalities, seeks to impose operational mandates on municipalities ill-adapted to comply with those mandates, and is not necessary to DEQ enforcement of laws preventing pollution of the waters of the state.

Affirmed.

O'CONNELL, J., dissenting, stated that Rule 33 falls within the general purpose of the Natural Resources and Environmental Protection Act, MCL 324.101 *et seq.*, complies with the legislative intent behind the act of empowering the DEQ to promulgate and enforce rules relative to sewage systems to prevent the unlawful pollution of the water resources of the state, complies with the underlying purpose of the act, and has a valid purpose and an intelligent design and therefore is not arbitrary or capricious. Judge O'CONNELL would reverse the ruling of the trial court.

ENVIRONMENT — PRIVATE SEWAGE SYSTEMS — PERMITS — DEPARTMENT OF ENVIRONMENTAL QUALITY — ADMINISTRATIVE RULES.

An administrative rule of the Department of Environmental Quality requiring the owner of a proposed private sewage system to submit with its application to the department for a construction permit a resolution from the local government agency having jurisdiction, stating that that agency shall assume responsibility for the effective and continued operation and maintenance of the proposed system if the owner in any way fails to do so, does not comply with the legislative intent underlying the department's enabling statute, is arbitrary and capricious, and is invalid (1999 AC R, 299.2933[4], MCL 324.99903).

*Dykema Gossett PLLC* (by *Alan M. Greene*) for Lake Isabella Development, Inc.

*Lynch, Gallagher, Lynch, Martineau & Hackett, P.L.L.C.* (by *John J. Lynch*), for village of Lake Isabella.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Kathleen L. Cavanaugh*, Assistant Attorney General, for Department of Environmental Quality.

Amici Curiae:

*Paul M. Lubienski* for Michigan Onsite Wastewater Recycling Association.

*McClelland & Anderson, L.L.P.* (by *Gregory L. McClelland* and *Melissa A. Hagen*), for Michigan Association of Home Builders and Michigan Association of Realtors.

Before: DONOFRIO, P.J., and SAWYER and O'CONNELL, JJ.

DONOFRIO, P.J. Defendant Michigan Department of Environmental Quality (DEQ) appeals by leave granted an order granting summary disposition to plaintiff Lake Isabella Development, Inc., declaring one of the DEQ's administrative rules, 1999 AC, R 299.2933(4) (Rule 33) invalid after the trial court found the rule to be arbitrary and capricious and not in compliance with the legislative intent of the DEQ's enabling statute. The matter arose because Rule 33 requires applicants seeking to construct a private sewage system to obtain a resolution from the local government agency agreeing to take over the sewage system if the owner fails to operate or maintain it properly. Plaintiff sought to construct a sewer system for a development project, but the village of Lake Isabella denied plaintiff the resolution and the DEQ refused to consider the developer's application. On an action by plaintiff for injunctive and declaratory relief, the DEQ and plaintiff each moved for summary disposition,

and the trial court granted summary disposition for plaintiff. This Court granted leave for this interlocutory appeal, and we affirm because we find Rule 33 invalid as it is not in conformity with the legislative intent of the DEQ's enabling statute and is arbitrary and capricious.

FACTS

The facts of this case are not in dispute. Plaintiff owns a twenty-five acre parcel of land adjacent to Lake Isabella. The property is zoned LR-1 (Lake Residential), which permits single-family dwellings. Plaintiff sought to develop a thirty-eight unit single-family condominium project on the property and requested approval of its site plan from the village. The site plan proposed to construct a private wastewater disposal system to serve the development because the village did not have a public sewer system, and the lakefront land contained soils unsuitable for on-site septic systems. The village agreed that plaintiff's site plan "was a permitted use under the Village Zoning Ordinance." The village also pointed out its lack of a public sewage system, its lack of money to construct one, and the necessity of a private wastewater treatment system for the proposed project. The village's planning commission approved the site plan, conditioned on plaintiff obtaining all required state and county permits and approvals.

Plaintiff submitted a detailed engineering plan and permit application to the DEQ. The DEQ refused to review the plan or issue a permit until the village provided a resolution as required by 1999 AC, R 299.2933(4) ensuring that the village agreed to take over the private wastewater disposal system in the

event it was not properly operated or maintained. In accordance with Rule 33, plaintiff requested the necessary resolution from the village. The village rejected plaintiff's request at a council meeting. According to plaintiff, "MDEQ's requirement that the Village adopt the resolution at issue and/or the Board's decision to not provide such resolution has effectively killed the Project."

Plaintiff filed a complaint against the village asserting claims of regulatory taking and violation of due process.[1] Plaintiff also filed a claim against the DEQ seeking a declaratory ruling that Rule 33 exceeded the scope of the DEQ's rulemaking authority and was therefore invalid. Plaintiff also sought injunctive relief or mandamus. The DEQ moved for summary disposition under MCR 2.116(C)(8), asserting that Rule 33 is within the scope of its authority granted by the Legislature in the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq.*, and that Rule 33 is consistent with the Michigan Constitution. Plaintiff filed a cross-motion for summary disposition. After hearing oral arguments, the trial court issued an opinion and order declaring that "Rule 299.2933(4) does not comply with the legislative intent underlying the enabling statute and is arbitrary and capricious. Therefore, the court finds that Rule 299.2933(4) created by they [sic] MDEQ invalid." The trial court denied summary disposition to the DEQ and granted it to plaintiff. It is from this order that defendant DEQ appeals by leave granted from this Court.

---

[1] These are not issues on appeal.

ANALYSIS

This case concerns the interpretation of statutes and administrative rules. Statutory construction applies to administrative rules.[2] Statutory interpretation is a question of law that is reviewed de novo.[3] The validity of an administrative rule is dependent on a three-part test set out by this Court in *Dykstra v Dep't of Natural Resources*:[4]

> (1) whether the rule is within the subject matter of the enabling statute; (2) whether it complies with the legislative intent underlying the enabling statute; and (3) whether it is arbitrary or capricious.

The Legislature created the DEQ when it enacted MCL 324.99903, and gave the DEQ authority under Part 41 of the NREPA, MCL 324.4101 *et seq.*, over sewerage systems. The parties agree that Rule 33 was promulgated pursuant to MCL 324.4104, which states in part that

> [t]he department may promulgate and enforce rules as the department considers necessary governing and providing a method of conducting and operating all or a part of sewerage systems including sewage treatment works.

Rule 33 provides in pertinent part:

> (1) Before the construction or alteration of a sewerage system or portions thereof, plans and specifications therefor shall be submitted to the department for review and issuance of a construction permit.

---

[2] *Bunce v Sec of State*, 239 Mich App 204, 209; 607 NW2d 372 (1999).

[3] *Koontz v Ameritech Services, Inc*, 466 Mich 304, 309; 645 NW2d 34 (2002).

[4] *Dykstra v Dep't of Natural Resources*, 198 Mich App 482, 484; 499 NW2d 367 (1993).

\*     \*     \*

> (4) *When the owner of the proposed sewerage system is not a governmental agency, the* application *for a permit shall include a resolution from the local governmental agency having jurisdiction, stating that the governmental agency shall assume responsibility for the effective and continued operation and maintenance of the proposed sewerage system if the owner in any way fails to perform in this capacity.* A copy of contractual or other arrangements between the owner and the governmental agency, which provide for the continuity of service agreement, shall also be submitted. [Emphasis added.]

The DEQ argues that the trial court erred when it declared Rule 33 invalid. It is the DEQ's position that Rule 33 was promulgated pursuant to the NREPA, and that the NREPA grants the DEQ the authority to promulgate rules and provide for the proper operation of all sewerage systems for the purpose of preventing pollution of the waters of the state. To further that purpose, Rule 33 requires a private owner of a proposed sewerage system to obtain an agreement from the local unit of government to run the system in the event of a default by the private owner. The DEQ further states that local units of government are liable for sewage in their jurisdiction and are in a unique position to assess property owners the cost of continued operation of the system and to prevent pollution to the waters of the state.

I

First, we must address whether Rule 33 is within the subject matter of the DEQ's enabling statute.[5] The

---

[5] *Dykstra, supra* at 484.

circuit court, after reciting the preambles to MCL 324.101 and MCL 324.4104, found that "it is clear that the legislature empowered the Michigan Department of Environmental Quality to promulgate rules and the rule at issue is within the subject matter of the enabling statute." We agree.

The DEQ argues that the rule in question was promulgated for the purposes of implementing the NREPA. 1999 AC, R 299.2901 states that "[t]hese rules are promulgated for the purpose of implementing the provisions of the act." Under Rule 299.2903(a), " 'Act' means . . . MCL 324.101 *et seq.*" Plaintiff, joined by the Michigan Association of Realtors in its amicus brief, argues that the subject matter of the enabling statute is limited to methodology of the operation of sewerage systems and not who should be liable for that operation. In any event, the parties agree that Rule 33 was promulgated pursuant to the rulemaking authority granted in MCL 324.4104. MCL 324.4104 states in part:

> The department may promulgate and enforce rules as the department considers necessary governing and providing a method of conducting and operating all or a part of sewerage systems including sewage treatment works.

Without deciding the scope of the DEQ's rulemaking authority concerning the operation of sewerage systems, we find Rule 33 does concern itself with the operation of a sewage system. Irrespective of whether Rule 33 complies with the underlying intent of MCL 324.4101 *et seq.*, the subject matter is the operation of sewerage systems. Therefore, Rule 33 is within the subject matter of the DEQ's enabling statute, MCL 324.99903.

II

Now we must turn to the second prong of the analysis and determine if Rule 33 complies with the legislative intent underlying the DEQ's enabling statute, MCL 324.99903. In order to make that determination, we must ascertain the plain meaning of the statute.

This Court has held that "[a] statute that grants power to an administrative agency must be strictly construed and the administrative authority drawn from such statute must be granted plainly, because doubtful power does not exist."[6] Although "[w]here an agency is charged to administer an act, as here, that agency's construction of the statute must be given deference," that deference "cannot be used to overcome the statute's plain meaning," and "where powers are specifically conferred they cannot be extended by inference."[7]

The circuit court held that Rule 33 does not comply with the legislative intent underlying the DEQ's enabling statute for the following reasons:

> The statute [MCL 324.3109(2)] is intended to regulate the discharge of both private and public sewage systems. The rule grants absolute discretion to the local governmental agency without any objective criteria to reject sewage disposal methods authorized by statute and regulated by Michigan Department of Environmental Quality. An arbitrary rejection of the requested resolution of the local governmental authority prevents safe and sound sewage treatment practices which are authorized and encouraged by the law, and would thus require the use of individual septic systems

---

[6] *In re Procedure and Format for Filing Tariffs Under the Michigan Telecommunications Act*, 210 Mich App 533, 539; 534 NW2d 194 (1995).

[7] *Alcona Co v Wolverine Environmental Production, Inc*, 233 Mich App 238, 247; 590 NW2d 586 (1998).

or some other sewage disposal system which are discouraged by the law. Under the rule promulgated by the agency which requires the local governmental agency to pass a resolution that they will assume responsibility for the sewage system should the developer be unable to maintain it before the developer is able to get past the application process, the local governmental agency has unfettered discretion for denial of systems which would otherwise be encouraged by laws and regulations. This unchecked discretion allows a local governmental unit to prevent development or simply roadblock a specific developer that they may dislike without any standards or rational basis. If the municipality does not have a sewage system of its own it may not, as in this case, pass a resolution because it does not want the potential liability. The purpose of the statute is to regulate discharge of sewage, not to prevent the development of reliable sewage treatment plants. Thus, this rule is not rationally related to the legislative purpose in any manner.

For background purposes we read the statutory preamble to the NREPA, MCL 324.101 *et seq.* We note that "[a]lthough a preamble is not to be considered authority for construing an act, it is useful for interpreting its purpose and scope."[8] However, so long as the result is " 'consistent with other rules of interpretation,' " a " 'preamble may be employed to extend the meaning of an ambiguous statute beyond the limited language of the purview.' "[9] The statutory preamble to the NREPA, MCL 324.101 *et seq.*, states:

An act to protect the environment and natural resources of the state; to codify, revise, consolidate, and classify laws relating to the environment and natural resources of the state; to regulate the discharge of certain substances into

---

[8] *Malcolm v East Detroit*, 437 Mich 132, 143; 468 NW2d 479 (1991).

[9] *King v Ford Motor Credit Co*, 257 Mich App 303, 312; 668 NW2d 357 (2003), quoting 2A Singer, Sutherland *Statutory Construction* (6th ed), § 47:04, pp 219-266.

the environment; to regulate the use of certain lands, waters, and other natural resources of the state; to prescribe the powers and duties of certain state and local agencies and officials; to provide for certain charges, fees, and assessments; to provide certain appropriations; to prescribe penalties and provide remedies; to repeal certain parts of this act on a specific date; and to repeal certain acts and parts of acts.

The parties do not dispute that the DEQ has the power to promulgate rules; the question specifically before us is whether the Legislature intended the DEQ to be able to promulgate a rule that in essence requires a local governmental agency to be responsible for a sewerage system as a condition precedent to permitting development. The crux of the DEQ's argument urging us that that is the case is that Rule 33 is merely an enforcement mechanism for preexisting duties providing increased efficiency in the protection of the environment. Conversely, the other parties insist that Rule 33 acts as a liability-shifting mechanism, is an impermissible delegation of authority, and that its end result will either interfere with development or result in proliferation of inferior sewage arrangements contrary to the legislative intent underlying the DEQ's enabling statute.

In support of its argument that Rule 33 does not exceed or operate contrary to statutory authority, the DEQ first cites MCL 324.3109(2), which provides as follows:

The discharge of any raw sewage of human origin, directly or indirectly, into any of the waters of the state shall be considered prima facie evidence of a violation of this part by the municipality in which the discharge originated unless the discharge is permitted by an order or rule of the department. If the discharge is not the subject of

a valid permit issued by the department, a municipality responsible for the discharge may be subject to the remedies provided in section 3115. If the discharge is the subject of a valid permit issued by the department pursuant to section 3112, and is in violation of that permit, a municipality responsible for the discharge is subject to the penalties prescribed in section 3115.

The DEQ asserts that MCL 324.3109(2) imposes strict liability and uses the provision to support its assertion that the Legislature intended to make municipalities strictly responsible for the discharge of sewage that originates in the municipality. Strict liability is "[l]iability that does not depend on actual negligence or intent to harm, but that is based on the breach of an absolute duty to make something safe."[10] In order to find a violation of MCL 324.3109(2), MCL 324.3115 states that liability requires actual knowledge, constructive knowledge, or disregard. Clearly, the operation of MCL 324.3115 makes the DEQ's assertion that local governments will be strictly liable for a discharge under MCL 324.3109(2) erroneous. We agree with the circuit court that MCL 324.3109(2) does not impose strict liability on municipalities and does not provide statutory authority for the challenged Rule 33 requirement.

The DEQ also points us to MCL 78.23(f), which states that "[e]ach village charter shall provide for . . . the public peace and health, and for the safety of persons and property." In the same vein, the DEQ relies on Const 1963, art 7 § 29 as establishing a preexisting duty requiring anyone operating a public utility to obtain a franchise from a village in order to, among

---

[10] Black's Law Dictionary (7th ed), p 926.

other things, "transact local business therein." In fur-
therance of this argument, the DEQ contends that MCL
324.4302(1) makes the sewerage system at issue a
"public utility." MCL 324.4302(1) states as follows in
pertinent part:

> The waterworks system, intercepting sewers, pumping
> stations, sewage disposal plant and system, transfer station,
> and garbage and refuse processing or disposal plant and
> system, are public utilities within the meaning of any con-
> stitutional or statutory provisions for the purpose of acquir-
> ing, purchasing, owning, operating, constructing, equipping,
> and maintaining the waterworks system, intercepting sew-
> ers, pumping stations, sewage disposal plant and system,
> transfer station, and garbage and refuse processing or dis-
> posal plant and system.

But MCL 324.4302(1) is part of the whole of MCL
324.4301 *et seq.*, which refers to the control of water-
works systems and sewers by a "local unit of govern-
ment," *not* by a private entity. In this case, we are not
concerned with any unit of government, but rather a
private developer establishing a sewerage system for
a development that will include a group of private
property owners. The record indicates without ques-
tion that the sewerage system will be a closed system
servicing only those private individuals comprising
owners of the development and will not be accessible
to the public at large. Moreover, there is legal prece-
dent for the proposition that simply because a "sewer
system serves the public and is, therefore, a public
utility in the ordinary sense of the word," the sewer
system is not necessarily a "public utility."[11]

---

[11] *Butcher v Grosse Ile Twp*, 24 Mich App 389, 399; 180 NW2d 367
(1970), aff'd in part and reversed in part on other grounds 387 Mich 42;

Because the sewerage system at issue plainly is not a public utility and does not implicate any unit of government, we find Const 1963, art 7 § 29 together with MCL 324.4302(1) and MCL 78.23(f) irrelevant to the instant case. For these reasons, we are not persuaded by any of the DEQ's arguments that Rule 33 is nothing more than an efficient enforcement mechanism for preexisting duties.

One of the amicus, the Michigan Onsite Wastewater Recycling Association (MOWRA), asserts that the NREPA is intended, in relevant part, to give the state sole jurisdiction over sewage system operation. MOWRA takes the position that Rule 33 is contrary to that intent because it grants local governments the power to authorize a sewage system. MCL 324.4105(1) states in part:

> Before constructing a sewerage system, filtration or other purification plant, or treatment works or any alteration, addition, or improvement to the system or plant, the mayor of each city, the president of each village, and the responsible official of all other governmental agencies, associations, private corporations, and partnerships or individuals shall submit the plans and specifications to the department and secure from the department a permit for construction. The department may promulgate and enforce rules regarding the preparation and submission of plans and specifications and for the issuance and period of validity of construction permits for the work. A contractor, builder, governmental agency, corporation, association, partnership, or individual shall not engage in or commence the construction of a sewerage system, filtration or other purification plant, or treatment works or an alteration, addition, or improvement until

194 NW2d 845 (1972), app dis 409 US 814; 93 S Ct 69; 34 L Ed 2d 71 (1972).

a valid permit for the construction is secured from the department.

MCL 324.4105(2) further states:

> A municipal officer or an officer or agent of a governmental agency, corporation, association, partnership, or individual who permits or allows construction to proceed on a sewerage works without a valid permit, or in a manner not in accordance with the plans and specifications approved by the department, is guilty of a misdemeanor.

A plain reading of these statutes in the analysis of this issue leads us to the inference that, because both individuals and government agencies are required to obtain permits from the DEQ, the DEQ has exclusive jurisdiction over those permits. The DEQ stresses that the decision to grant a permit remains with the DEQ, but concedes that Rule 33 "allows the local government to exercise discretion." Undoubtedly, a municipality's exercise of discretion pursuant to Rule 33 cannot guarantee that the DEQ will grant a permit for a proposed sewerage system, but it can guarantee that a permit will not be granted. As is demonstrated in the instant case, Rule 33 empowers a municipality to deny an otherwise proper use of property simply by refusing to grant the resolution required by Rule 33. For this reason, we find a municipality's discretion in the application of Rule 33 fundamentally a "veto power." To the extent that Rule 33 transfers decision making authority from the DEQ to municipalities, we find this contrary to the legislative intent underlying the enabling statute.

Plaintiff asserts in its brief on appeal that Rule 33 is not concerned with the DEQ's regulation of the planning, construction, or operation of the sewer system,

but instead is a liability shifting provision purporting to transfer statutory liability and responsibility from the permittee, or the DEQ itself, to a municipality. A plain reading of Rule 33 reveals that if the municipality grants the required resolution, then Rule 33 imposes liability on the municipality to "assume responsibility for the effective and continued operation and maintenance of the proposed sewerage system if the owner in any way fails to perform in this capacity." This liability imposes a new burden on municipalities.

We do agree in some respects with the DEQ's characterization of Rule 33 as an enforcement mechanism, but Rule 33, under the guise of "enforcement" imposes a liability on municipalities. This burden goes beyond enforcement and essentially operates as a new remedy rather than a means of implementing existing remedies. Because the NREPA " 'creates and regulates,' " this Court has held that " '[t]he method prescribed in a statute for enforcing the rights provided in it is . . . presumed to be exclusive.' "[12] The DEQ is authorized to promulgate rules regarding the governing, operating, and conducting of a sewerage system. However, under MCL 324.4111, enforcement must be conducted by "an appropriate action in the name of the people of this state." We do not find the promulgation of a rule imposing a new burden on a municipality an appropriate method of enforcement and again find this contrary to the legislative intent underlying the enabling statute.

---

[12] *Williams v Coleman*, 194 Mich App 606, 613; 488 NW2d 464 (1992), quoting 2A Sands, Sutherland Statutory Construction (4th ed), § 47.23, p 194.

In sum, we find that Rule 33 effectively confers on municipalities indirect veto power in contravention of a grant of exclusive jurisdiction to the DEQ. Also, Rule 33 does not merely articulate a preexisting liability as an enforcement mechanism, it creates a new burden and a new remedy. For these reasons we find that Rule 33 does not comport with the legislative intent underlying the DEQ's enabling statute.

III

The third and final prong of the analysis requires us to determine if Rule 33 is arbitrary and capricious. This Court has held:

> A rule is arbitrary if it was fixed or arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances, or significance. A rule is capricious if it is apt to change suddenly or is freakish or whimsical. If a rule is rationally related to the purpose of the statute, it is neither arbitrary nor capricious. Further, if there is any doubt as to the invalidity of a rule in this regard, the rule must be upheld.[13]

The DEQ maintains that Rule 33 is not arbitrary and capricious because it is rationally related to the purpose of the statute, namely, efficient enforcement of the laws preventing pollution of the waters of the state. The DEQ asserts that the requirement imposed by Rule 33 makes enforcement of existing laws preventing pollution more efficient because local municipalities are in a better position than the DEQ to carry out the requirements of Rule 33. Plaintiff and the amici insist that the application of Rule 33 will

---

[13] *Dykstra, supra* at 491 (internal citations and quotations omitted).

cause a proliferation of unsafe septic systems, a result directly contrary to the goal of reducing pollution. The DEQ points out that any system a developer wished to install would require safety approval by some appropriate governmental unit.

The only law cited to reinforce either position is a reference to MCL 333.12752. MCL 333.12752 is a legislative declaration that septic tanks are less safe than public sanitary sewer systems. Clearly, the Legislature would prefer sewers to septic tanks but if individual septic systems were a feasible option for this development and similar developments, this matter would not be before this Court.

We can easily envision a scenario where, upon a municipality's refusal to grant a resolution under Rule 33, the relevant project will be abandoned and development simply will not take place. The DEQ does not rebut this possibility. The functional result of this outcome is an obvious illustration of the veto power over private sewer systems granted municipalities by Rule 33 discussed above. Plaintiff and the amici contend that the indirect veto power conferred upon municipalities amounts to an illegal or unconstitutional delegation of absolute discretionary authority to municipalities regarding whether to permit a private sewerage system.

As plaintiff points out, this Court has stated, "[i]t is well settled that an administrative agency may not subdelegate the exercise of discretionary acts unless the Legislature expressly grants it authority to do so."[14] We also recognize that this Court has also found it acceptable to delegate " 'authority or discretion as

---

[14] *Edmond v Dep't of Corrections (On Remand)*, 143 Mich App 527, 536; 373 NW2d 168 (1985).

to the execution of the law.' "[15] But, even under the latter, delegation of power must be accompanied by at least some standards regarding the exercise of that power.[16] In light of the applicable law, we find that the DEQ is not empowered to grant to a local municipality such discretionary power. Also, in light of applicable law, the DEQ's claim, that neither the Legislature nor the DEQ has to articulate the criteria a local unit of government must apply in the approval process, fails.

The parties also dispute whether the DEQ or the local municipality is in the better position to assess the costs of operations and maintenance on the users of the system. The DEQ argues that municipalities can use assessments to adequately fund and manage sewer systems in the event they are called on to take over a sewage system pursuant to a resolution. The village states that it has no funds to build a sewer system for its citizens, much less guarantee the obligations of a private developer. Where, as here, the village has no money, public works, law enforcement, or operating engineers to effectuate a safe, let alone efficient sewerage system, we fail to understand how the village is in a superior position than the DEQ to further the purpose of the statute, i.e., efficient enforcement of the laws preventing pollution of the waters of the state.

The DEQ is empowered to enforce laws directly without the application of Rule 33 by operation of MCL 333.2455 concerning nuisance and unsanitary

---

[15] *Mobil Oil Corp v City of Clawson*, 36 Mich App 46, 51; 193 NW2d 346 (1971); quoting 8A McQuillan, Municipal Corporations (3d ed), § 25.215, pp 100, 101.

[16] *Id.* at 51-52.

conditions. MCL 333.2455 declares that "a local health
department or the department" is authorized to "cor-
rect" unsanitary conditions at the expense of the
owner. Hence, like a local municipality, the DEQ is
able to directly assess the costs of operations and
maintenance of a sewerage system on the users of the
system in the instance where a wastewater system is
not properly operated or maintained. Unlike a local
municipality like the village, however, the DEQ has
tools, including expert managers and engineers who
can ensure that abandoned wastewater systems are
quickly made operational, to prevent pollution of the
waters of the state.

We find that Rule 33 is arbitrary and capricious
because it constitutes an unlawful delegation of dis-
cretionary power to municipalities, seeks to impose
operational mandates upon a municipalities ill-
adapted to comply with those mandates, and is
unnecessary to the DEQ for enforcement.

CONCLUSION

We find Rule 33 invalid because it is not in con-
formity with the legislative intent of the DEQ's ena-
bling statute and is arbitrary and capricious.

Affirmed.

SAWYER, J., concurred.

O'CONNELL, J. (*dissenting*). I respectfully dissent.
The majority concedes that the Department of Envi-
ronmental Quality (DEQ) satisfies *Dykstra's*[1] first
prong because Rule 33 falls within the general pur-

---

[1] *Dykstra v Dep't of Natural Resources*, 198 Mich App 482, 484; 499
NW2d 367 (1993).

pose of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq.* The only issues that remain are whether the rule complies with the legislative intent behind the act, and whether the rule represents arbitrary and capricious action by the DEQ.

According to MCL 324.4104, the DEQ "may promulgate and enforce rules as the [DEQ] considers necessary governing and providing a method of conducting and *operating* all or a part of sewerage systems . . . ." (Emphasis added.) Also, MCL 324.4108, states that the DEQ "shall exercise due care to see that sewerage systems are properly planned, constructed and *operated* to prevent unlawful pollution of the . . . water resources of the state." (Emphasis added.) These statutes do not restrict the DEQ to rubber-stamping sewage systems that temporarily comply with the safe operation requirements. They anticipate that the DEQ will demand substantive assurance of continuous operation for the length of the system's use and beyond. Rule 33 accomplishes this goal by disallowing the construction of the system without proof of the local government's willingness to assume its operation if it is abandoned. Regulations that require local governments to properly manage the sewage generated within their boundaries pervade the NREPA. Given this solid legal foundation for the rule and the broad rulemaking authority bestowed on the DEQ, I cannot find that it falls outside the authority that the Legislature properly delegated to the DEQ.

Furthermore, the rule "complies with the [NREPA's] underlying legislative purpose."[2] According to the

---

[2] *Dykstra, supra,* at 486.

majority, if a developer or its successor in title fails to maintain a sewage system, the DEQ faces the prospect of necessarily stepping in and taking responsibility for the abandoned cesspool. The majority posits that the Legislature intended this result, despite the fact that local governments, through forty years of legislation designed to require them to manage their sewage, possess the resources, information, and local accountability needed to take responsibility for the abandoned systems. Looking at the NREPA and the burdens it generally places on local governments, Rule 33 conforms perfectly to the greater legislative scheme. Local governments should bear the responsibility for managing an abandoned facility within their bounds and should also have the preemptory option of declining that responsibility. Contrary to the majority's position, the rule does not grant "veto power" to a local government any more than it would grant veto power to a bonding company. It does not delegate sewage authority because the DEQ fully retains the right to reject the proposed sewage system. The rule does not require local approval of the system, but rather it requires an agreement to run the system if abandoned. If plaintiff can present a satisfactory bond to the DEQ, then nothing prevents him from presenting an equally satisfactory bond to the village.

Finally, the rule has a valid purpose and an intelligent design. It assigns responsibility for the competent perpetual operation of sewage systems so that we can pass on our heritage of clean, pure water without concern about who should clean up after developers who no longer find it economically feasible to safely operate their sewage systems. It recognizes that the desire to encourage development drives local government; the desire to ensure the perpetually

safe operation of sewage systems drives the DEQ; and the desire to cut costs, increase profit, and *finish* projects drives the developer.

Nothing will stunt development more than charging the DEQ with the never ending responsibility of cleaning up every abandoned system that receives a permit without local backup. Permits will only issue, if at all, to developers who can afford to bond out the perpetual operation of their proposed sewage plans regardless of the local government's willingness to independently ensure the system's continuous operation. Nothing could threaten our watersheds more than allowing haphazard developers to receive permits, build large sewage retention lagoons, sell their lots, and leave the maintenance of the lagoons to ill-equipped and poorly funded homeowners and neighborhood associations who would not know of grave environmental disasters until far too late. Whatever fault may be found with Rule 33, it corresponds with the act's purpose of ensuring the continuous and proper maintenance of sewage facilities and is rationally related to that end.[3] I would reverse.

---

[3] *Dykstra, supra,* at 491.