MICHIGAN ELECTRIC COOPERATIVE ASSOCIATION v
PUBLIC SERVICE COMMISSION

Docket Nos. 252949, 253899. Submitted July 7, 2005, at Lansing. Decided
August 4, 2005, at 9:10 a.m.

The Michigan Electric Cooperative Association, the Michigan Elec-
tric & Gas Association, Consumers Energy Company, and The
Detroit Edison Company appealed against the adoption by the
Public Service Commission of administrative rules promulgated
under the Customer Choice and Electricity Reliability Act
(CCERA), MCL 460.10 *et seq.*, and relating to service quality and
reliability standards for electric distribution systems. The utilities
particularly challenged the rules providing for automatic penalties
for failure to meet standards, the arbitrary and capricious nature
of the automatic penalties, the lack of evidence justifying the
standards, and lack of due process. The appeals were consolidated.

The Court of Appeals *held*:

The PSC orders adopting and approving rules providing for the
imposition of automatic penalties for a utility's failure to comply
with performance standards are lawful and reasonable, comply
with the legislative intent of the enabling statutes, and are
supported by the requisite evidence.

1. The CCERA authorized the PSC to adopt performance
standards and contained language authorizing the PSC to impose
automatic penalties for violations of those standards. MCL
460.10p(5), 460.10p(8). The appellants have not demonstrated
that the PSC exceeded its statutory authority in adopting rules
that provide for the imposition of automatic penalties and have not
shown by clear and satisfactory evidence that the PSC orders are
unlawful or unreasonable. MCL 462.26(8).

2. A rule is arbitrary if it was fixed or arrived at through an
exercise of will or by caprice, or without consideration or adjust-
ment with reference to principles, circumstances, or significance.
A rule is capricious if it is apt to change suddenly, or is freakish or
whimsical. The appellants have not shown that the rules providing
for automatic penalties are unlawful or unreasonable. MCL
462.26(8).

3. The PSC claimed that customers were dissatisfied with the quality of electric service, and the appellants presented evidence that the customers were satisfied. Nonetheless, the PSC approved rules imposing automatic penalties as an incentive to utilities to comply with the performance standards, not as a punishment for any perceived customer dissatisfaction. The appellants have not shown that the PSC orders adopting the rules are unlawful or unreasonable. MCL 462.26(8).

4. The Legislature can delegate power to determine a fact or status upon which the law makes, or intends to make, its own action depend. Such a law must provide standards to permit efficient administration designed to carry out legislative policy, but not be so broad that it leaves an administrative body with uncontrolled and arbitrary power. The PSC's interpretation and application of MCL 460.10p(8) as allowing the imposition of automatic penalties is reasonable and thus entitled to deference. The rules adopted by the PSC do not deprive a utility of due process as they afford a utility the opportunity to seek a waiver of the automatic penalty provisions. If a waiver is sought, the matter proceeds as a contested case at which the utility is afforded the right to an evidentiary hearing, the rules of evidence apply, and a written decision containing findings of fact and conclusions of law is issued.

Affirmed.

PUBLIC UTILITIES — ELECTRIC DISTRIBUTION SYSTEMS — QUALITY AND RELIABILITY STANDARDS — AUTOMATIC PENALTIES.

The Public Service Commission orders adopting and approving administrative rules providing for the imposition of automatic penalties for an electric utility's failure to comply with service quality and reliability standards established pursuant to the Customer Choice and Electricity Reliability Act are lawful and reasonable, comply with the legislative intent of the enabling statutes, and are supported by clear and satisfactory evidence (MCL 460.10p[8]; 1999 AC, R 460.744 to 460.746).

*James A. Ault* for the Michigan Electric and Gas Association.

*Dykema Gossett PLLC* (by *Albert Ernst* and *Christine Mason Soneral*) for the Michigan Electric Cooperative Association.

*Jon R. Robinson* for Consumers Energy Company.

*Michael J. Solocinski* for The Detroit Edison Company.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, and *David A. Voges,* and *Michael A. Nickerson,* Assistant Attorneys General, for the Public Service Commission.

Before: FITZGERALD, P.J., and METER and OWENS, JJ.

PER CURIAM. In these consolidated cases, appellants Michigan Electric Cooperative Association (MECA),[1] Michigan Electric & Gas Association (MEGA),[2] Consumers Energy Company, and The Detroit Edison Company claim appeals from orders entered on November 25, 2003, and January 29, 2004, by appellee Michigan Public Service Commission (PSC) adopting and approving administrative rules governing service quality and reliability standards for electric distribution systems and authorizing automatic penalties for the failure to meet those standards.[3] We affirm in each case.

---

[1] MECA represents the following customer-owned rural electric cooperatives in this action: Alger Delta Cooperative Electric Association, Cherryland Electric Cooperative, Cloverland Electric Cooperative, Great Lakes Energy Cooperative, HomeWorks Tri-County Electric Cooperative, Midwest Energy Cooperative, Ontonagon County Rural Electrification Association, Presque Isle Electric & Gas Cooperative, and Thumb Electric Cooperative.

[2] MEGA represents the following investor-owned electric utilities: American Electric Power Company, Alpena Power Company, Edison Sault Electric Company, Upper Peninsula Power Company, We Energies, Wisconsin Public Service Corporation, and Xcel Energy.

[3] "Service Quality and Reliability Standards for Electric Distribution Systems," 1999 AC, R 460.701-460.752. The rules, commonly referred to as "performance standards," are composed of five parts: (1) general provisions, (2) unacceptable levels of performance, (3) records and

I. UNDERLYING FACTS AND PROCEEDINGS

On January 3, 2000, the PSC directed its staff to review methods designed to improve the reliability of service rendered to Michigan's electric power customers by regulated electric utilities and to propose performance standards for those utilities. The matter was docketed as Case No. U-12270 and was initiated as a nonrulemaking proceeding.

On June 5, 2000, while Case No. U-12270 was pending, 2000 PA 141, the Customer Choice and Electricity Reliability Act (CCERA), MCL 460.10 *et seq.*, became effective. The Legislature enacted the CCERA as part of its decision to deregulate the electric utility industry in Michigan. *Attorney General v Pub Service Comm*, 249 Mich App 424, 426; 642 NW2d 691 (2002). The stated purposes of the CCERA included: (a) ensuring that retail electric power customers have a choice of electric suppliers, (b) allowing the PSC to foster competition in the provision of electric supply and to maintain regulation of that supply, (c) encouraging the diversification of ownership of electric supply, (d) ensuring that all the people in Michigan are provided reliable electric power at reasonable rates, and (e) improving opportunities for economic development in the state and promoting competitive and financially healthy utilities. MCL 460.10(2).

The CCERA required the PSC to establish service quality and reliability standards for electric transmission and distribution systems of regulated utilities. MCL 460.10p(5) provides:

---

reports, (4) financial incentives and penalties, and (5) waivers and exceptions. Appellants' challenge is limited to the automatic penalty provisions.

The commission shall adopt generally applicable service quality and reliability standards for the transmission and distribution systems of electric utilities and other entities subject to its jurisdiction, including, but not limited to, standards for service outages, distribution facility upgrades, repairs and maintenance, telephone service, billing service, operational reliability, and public and worker safety. In setting service quality and reliability standards, the commission shall consider safety, costs, local geography and weather, applicable codes, national electric industry practices, sound engineering judgment, and experience. The commission shall also include provisions to upgrade the service quality of distribution circuits that historically have experienced significantly below-average performance in relationship to similar distribution circuits.

In addition, the CCERA authorized the PSC to penalize a utility's failure to comply with performance standards established pursuant to MCL 460.10p(5). MCL 460.10p(8) provides:

The commission shall be authorized to levy financial incentives and penalties upon any jurisdictional entity which exceeds or fails to meet the service quality and reliability standards.

In light of the enactment of the CCERA, the PSC concluded that implementation of performance standards by way of the rulemaking process provided in the Administrative Procedures Act, MCL 24.201 et seq., was necessary and submitted a request for rulemaking along with the required Regulatory Impact Statement (RIS) to the Office of Regulatory Reform (ORR). MCL 24.239(2), 24.245(3). The ORR approved the request, and the PSC initiated a formal rulemaking proceeding. The PSC's proposed rules included provisions for the automatic imposition of penalties for a utility's failure to meet the performance standards. The automatic penalty provision rules provide:

R 460.744 Penalty for failure to restore service after an interruption due to catastrophic conditions.

Rule 44. Unless an electric utility requests a waiver pursuant to part 5 of these rules, an electric utility that fails to restore service to a customer within 120 hours after an interruption that occurred during the course of catastrophic conditions[4] shall provide to any affected customer that notifies the utility of the interruption with a bill credit on the customer's next bill. The amount of the credit provided to the residential customer shall be the greater of $25.00 or the customer's monthly customer charge. The amount of the credit provided to any other distribution customer shall be the customer's minimum bill prorated on a daily basis.

R 460.745 Penalty for failure to restore service during normal conditions.

Rule 45. Unless an electric utility requests a waiver pursuant to part 5 of these rules, an electric utility that fails to restore service to a customer within 16 hours after an interruption that occurred during normal conditions[5] shall provide to any affected customer that notifies the utility of the interruption a bill credit on the customer's next bill. The amount of the credit provided to a residential customer shall be the greater of $25.00 or the customer's monthly customer charge. The amount of the credit provided to any other distribution customer shall be the customer's minimum bill prorated on a daily basis.

R 460.746 Penalty for repetitive interruptions of the same circuit.

Rule 46. (1) Unless an electric utility requests a waiver pursuant to part 5 of these rules, a customer of an electric utility that experiences and notifies the utility of more than

---

[4] R 460.702(f) defined "catastrophic conditions" as severe weather conditions resulting in interruption of service to ten percent or more of a utility's customers, or a state of emergency declared by local, state, or federal government officials.

[5] R 460.702(r) defined "normal conditions" as "conditions other than catastrophic conditions."

7 interruptions in a 12-month period due to a same-circuit repetitive interruption[6] shall be entitled to a billing credit on the customer's next bill. The amount of the credit provided to a residential customer shall be the greater of $25.00 or the customer's monthly customer charge. The amount of the credit provided to any other distribution customer shall be the customer's minimum bill prorated on a daily basis.

(2) Following provision of the billing credit to a customer experiencing more than 7 interruptions in a 12-month period due to a same-circuit repetitive interruption, the electric utility's interruption counter shall be reset to zero to ensure that another credit to the customer will be processed only after the occurrence of another 8 interruptions in a 12-month period.

In an order entered on November 25, 2003, the PSC approved administrative rules governing service quality and reliability standards for electric utilities. The PSC rejected appellants' contentions that it lacked the statutory authority to impose automatic penalties and that automatic penalties were arbitrary and capricious, observing that the rules allowed a utility to seek a waiver of a penalty and entitled a utility to request a hearing before placing a credit on a customer's bill.

Appellants filed a claim of appeal from the PSC's November 25, 2003, order (Docket No. 252949). Subsequently, on January 29, 2004, the PSC entered an order formally adopting the rules.[7] Thereafter, appellants filed a claim of appeal from the PSC's January 29, 2004,

---

[6] R 460.702(s) defined "same-circuit repetitive interruption" as "a grouping of more than 10 customers on a circuit who experience multiple interruptions under all conditions." R 460.702(l) defined "interruption" as "the full or partial loss of service to 1 or more customers for longer than 5 minutes." The duration of the interruption was to be measured from the time the utility was notified or otherwise became aware of the loss of service.

[7] The Legislative Services Bureau and the ORR approved the rules on December 18, 2003, and January 6, 2004, respectively. The Joint Com-

order (Docket No. 253899). We consolidated the appeals for purposes of hearing and decision.

## II. STANDARD OF REVIEW

The standard of review for PSC orders is narrow and well-defined. Pursuant to MCL 462.25, all rates, fares, charges, classification, and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. *Michigan Consolidated Gas Co v Pub Service Comm*, 389 Mich 624, 635-636; 209 NW2d 210 (1973). A party aggrieved by an order of the PSC has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a mandatory statute or abused its discretion in the exercise of its judgment. *In re MCI Telecom*, 460 Mich 396, 427; 596 NW2d 164 (1999). An order is unreasonable if it is not supported by the evidence. *Associated Truck Lines, Inc v Pub Service Comm*, 377 Mich 259, 279; 140 NW2d 515 (1966).

A final order of the PSC must be authorized by law and be supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *Attorney General v Pub Service Comm*, 165 Mich App 230, 235; 418 NW2d 660 (1987).

We give due deference to the PSC's administrative expertise and will not substitute our judgment for that of the PSC. *Attorney General v Pub Service Comm No 2*, 237 Mich App 82, 88; 602 NW2d 225 (1999). We give great weight to any reasonable construction of a regulatory scheme that the PSC is empowered to administer, *Champion's Auto Ferry, Inc v Pub Service Comm*, 231

mittee on Administrative Rules had twenty-one days to object to the rules, MCL 24.245a(1), but filed no objections.

Mich App 699, 708; 588 NW2d 153 (1998), but we may not abandon our responsibility to interpret statutory language and legislative intent, *Miller Bros v Pub Service Comm*, 180 Mich App 227, 232; 446 NW2d 640 (1989). We do not afford the same measure of deference to an agency's initial interpretation of new legislation as we do to a longstanding interpretation. *In re Procedure & Format for Filing Tariffs Under the Michigan Telecom Act*, 210 Mich App 533, 538; 534 NW2d 194 (1995). Whether the PSC exceeded the scope of its authority is a question of law that we review de novo. *In re Complaint of Pelland Against Ameritech Michigan*, 254 Mich App 675, 682; 658 NW2d 849 (2003).

The PSC possesses only that authority granted it by the Legislature. Authority must be granted by clear and unmistakable language. A doubtful power does not exist. *Attorney General v Pub Service Comm*, 231 Mich App 76, 78; 585 NW2d 310 (1998).

Statutes that relate to the same subject or share a common purpose are *in pari materia* and must be read together as one law, even if they contain no reference to one another. *State Treasurer v Schuster*, 456 Mich 408, 417; 572 NW2d 628 (1998). The object of the rule is to give effect to the legislative purpose as found in the harmonious statutes. *Travelers Ins v U-Haul of Michigan, Inc*, 235 Mich App 273, 280; 597 NW2d 235 (1999). If two statutes lend themselves to a construction that avoids conflict, that construction should control. *House Speaker v State Administrative Bd*, 441 Mich 547, 568-569; 495 NW2d 539 (1993).

### III. ANALYSIS

### A. STATUTORY AUTHORITY

Appellants argue that the PSC's orders adopting and approving rules providing for automatic penalties are

unlawful and unreasonable because the PSC lacks the statutory authority to impose automatic penalties for a utility's failure to meet performance standards. MCL 460.10p(5) requires the PSC to adopt performance standards, and MCL 460.10p(8) authorizes the PSC to levy penalties on a utility that fails to meet those standards, but neither statute contains language authorizing the PSC to impose automatic penalties for violations of those standards. Appellants contend that MCL 460.10p(8) must be read in conjunction with MCL 460.10c(1), which applies to all sections of the CCERA and provides:

> Except for a violation under section 10a(3) and as otherwise provided under this section, upon a complaint or on the commission's own motion, if the commission finds, after notice and hearing, that an electric utility or an alternative electric supplier has not complied with a provision or order issued under sections 10 through 10bb, the commission shall order such remedies and penalties as necessary to make whole a customer or other person who has suffered damages as a result of the violation, including, but not limited to, 1 or more of the following:

> (a) Order the electric utility or alternative electric supplier to pay a fine for the first offense of not less than $1,000.00 or more than $20,000.00. For a second offense, the commission shall order the person to pay a fine of not less than $2,000.00 or more than $40,000.00. For a third and any subsequent offense, the commission shall order the person to pay a fine of not less than $5,000.00 or more than $50,000.00.

> (b) Order a refund to the customer of any excess charges.

> (c) Order any other remedies that would make whole a person harmed, including, but not limited to, payment of reasonable attorney fees.

> (d) Revoke the license of the alternative electric supplier if the commission finds a pattern of violations.

(e) Issue cease and desist orders.

Appellants maintain that the adoption of rules providing for the imposition of automatic penalties contradicts the legislative intent reflected in MCL 460.10c(1) that any penalty may be imposed only to make whole a customer who has suffered specific damages and only after notice to the utility and a hearing. We disagree.

MCL 460.10p(5) requires the PSC to adopt performance standards applicable to all electric utilities. Appellants' assertions that MCL 460.10p(8) does not authorize the PSC to impose automatic penalties for a utility's failure to meet those standards, and that all penalties may be imposed only through the procedure set out in MCL 460.10c(1) are not supported by the plain language of MCL 460.10p(8). MCL 460.10p(8) explicitly authorizes the PSC to levy financial penalties on a utility that fails to meet performance standards. We cannot ignore the plain language of MCL 460.10p(8) authorizing penalties; to do so would render that portion the statute surplusage or nugatory. *Hoste v Shanty Creek Mgt, Inc*, 459 Mich 561, 574; 592 NW2d 360 (1999).

It is reasonable to conclude that by authorizing the imposition of penalties for a utility's failure to comply with performance standards, without specifying that the penalties were intended to make whole those customers harmed by the failure, the Legislature did not intend to require that any specific harm be demonstrated before the imposition of the penalties. However, the language of MCL 460.10c(1) indicates that the imposition of penalties and remedies authorized by that subsection is to be done to make whole a customer damaged by a utility's violation of any provision of the CCERA. That damage must be established in a hearing, and the penalties and remedies authorized, such as

refunds of excess charges and payment of attorney fees, are determined by the nature of the damage established. MCL 460.10c(1) and 460.10p(8) relate to the same subject, i.e., the consequences of a utility's failure to comply with a provision of the CCERA, but have different purposes. However, the statutes may be construed in a manner that avoids conflict, *House Speaker, supra*, and that gives effect to each without overreaching, absurdity, or unreasonableness. *Livonia Hotel, LLC v Livonia*, 259 Mich App 116, 131; 673 NW2d 763 (2003). The CCERA is relatively new legislation; nevertheless, the PSC's conclusion that MCL 460.10p(8) authorizes the imposition of automatic penalties for a utility's violation of performance standards notwithstanding the lack of specific harm to any particular customer, is plausible, and is entitled to some deference. *Champion's Auto Ferry, supra*. Appellants have not demonstrated that the PSC exceeded its statutory authority by adopting rules that provide for the imposition of automatic penalties, and have not shown by clear and satisfactory evidence that the orders are unlawful or unreasonable. MCL 462.26(8).

### B. ARBITRARY AND CAPRICIOUS NATURE OF AUTOMATIC PENALTIES

In determining the validity of an administrative rule, a court must consider: (1) whether the rule is within the subject matter of the enabling statute; (2) whether it complies with the legislative intent underlying the enabling statute; and (3) whether it is arbitrary or capricious. *Dykstra v Dep't of Natural Resources*, 198 Mich App 482, 484; 499 NW2d 367 (1993). "A rule is arbitrary if it was 'fixed or arrived at through an exercise of will or by caprice, or without consideration or adjustment with reference to principles, circumstances, or significance.' " *Id.* at 491, quoting *Binsfield*

*v Dep't of Natural Resources,* 173 Mich App 779, 786; 434 NW2d 245 (1988). A rule is capricious if it is apt to change suddenly, or is freakish or whimsical. If a rule is rationally related to the statute's purpose, it is not arbitrary or capricious. *Id.* at 786, 787. Any doubt must be resolved in favor of the validity of a rule. *Dykstra, supra* at 491.

Appellants argue that the PSC's orders adopting rules providing for automatic penalties are unlawful because the automatic penalties are arbitrary and capricious. Appellants emphasize that when electric service is unavailable because of an outage, a customer effectively receives an automatic billing adjustment because the customer's meter does not run until power is restored. Therefore, an additional credit is duplicative and unnecessary. Furthermore, penalties may be imposed even though the performance standards are met.[8] The penalties, which are imposed as service credits granted to customers, have no relationship to the value of the electric service lost by the customer during an outage.

MCL 460.10p(8) authorizes the PSC to levy financial penalties on a utility that does not meet the performance standards. The rules providing for automatic penalties for a utility's failure to meet the performance standards are within the subject matter of and comply with the legislative intent underlying the enabling statute. Service credits required as penalties are not related to the actual value of the electric power lost by

---

[8] As an example, appellants note that R 460.722(c) requires a utility to restore service within eight hours to not less than 90 percent of customers who have experienced an outage under normal conditions. However, under R 760.745, unless the utility seeks a waiver, it would be required to grant service credits equal to the greater of $25 or the customer's monthly customer charge to any of the remaining customers who were without power for longer than 16 hours.

a customer during an outage, but this fact does not
make the imposition of such penalties arbitrary and
capricious. The intent of the legislation authorizing the
imposition of financial penalties is to encourage a utility
to take all reasonable measures to comply with the
performance standards, and not to make customers
whole. Furthermore, appellants correctly note that un-
der certain circumstances financial penalties could be
incurred by a utility that meets a particular perfor-
mance standard; however, that utility is free to seek a
waiver in the event those circumstances materialize. R
460.751. Appellants have not demonstrated that the
rules providing for automatic penalties are arbitrary or
capricious. *Dykstra, supra.* Appellants have not shown
that the PSC's orders adopting the rules are unlawful
or unreasonable. MCL 462.26(8).

### C. SUFFICIENCY OF EVIDENCE FOR INCLUSION OF AUTOMATIC PENALTIES

Appellants argue that the PSC's orders adopting
rules providing for automatic penalties are unlawful
because the PSC did not consider "safety, costs, local
geography and weather, applicable codes, national elec-
tric industry practices, sound engineering judgment,
and experience" when formulating the performance
standards, as required by MCL 460.10p(5). The PSC's
orders contain no findings on these factors. Further-
more, the PSC's RIS, prepared as required by MCL
24.239, erroneously stated that customers were dissat-
isfied with the quality of service being provided by
appellants. The PSC had the discretion to adopt perfor-
mance standards that did not include automatic penal-
ties, and its decision not to adopt standards without
automatic penalties was not supported by the requisite
evidence.

MCL 460.10p(5) does not require that the PSC make specific findings with regard to the various factors listed when formulating performance standards. Furthermore, appellants' assertion that the PSC did not undertake consideration of the relevant factors listed in MCL 460.10p(5) is unsubstantiated. Appellants presented evidence to counter the PSC's assertion that customers were dissatisfied with the quality of service they received, but the PSC approved rules imposing automatic penalties as an incentive to utilities to comply with the performance standards, and not as punishment for any perceived customer dissatisfaction. Appellants have not demonstrated that the PSC's orders approving the rules are unlawful or unreasonable. MCL 462.26(8).

### D. DUE PROCESS

No person may be deprived of property without due process of law. US Const, Am V; Const 1963, art 1, § 17. Before a person is deprived of property by administrative rule, that person must be afforded notice, an opportunity to be heard, and a written statement of findings. *Bundo v Walled Lake,* 395 Mich 679, 696-697; 238 NW2d 154 (1976).

The Legislature cannot delegate its power to make a law; however, it can enact a law that delegates a power to determine a fact or status upon which the law makes, or intends to make, its own action depend. Such a statute must be sufficiently broad to permit efficient administration designed to carry out legislative policy, but not so broad as to leave an administrative body with uncontrolled and arbitrary power. The guiding principles in determining whether a statute provides sufficient standards for the exercise of administrative discretion are: (1) the provision in question should be read with reference to the act as a whole; (2) the standard

should be as reasonably precise as the subject matter requires or permits;[9] and (3) if possible, the statute must be construed in such a way as to render it valid rather than invalid, i.e., as conferring administrative, not legislative power, and as vesting discretionary, not arbitrary, authority. *Dep't of Natural Resources v Seaman*, 396 Mich 299, 308-309; 240 NW2d 206 (1976).

Appellants argue that the rules providing for automatic penalties are unconstitutional because they function to deprive a utility alleged to have violated the rules of property, i.e., funds in the form of credits granted to customers, without due process. MCL 460.10p(8) does not authorize the PSC to ignore the due process protections of notice and a hearing provided for in MCL 460.10c(1). Appellants assert that the PSC's interpretation of MCL 460.10p(8) effectively allows it to assume legislative power to adopt new penalty provisions.

A utility may seek a waiver of the automatic penalty provisions before the imposition of a penalty. The PSC hears a petition for a waiver as a contested case. R 460.752(1). A contested case affords a petitioner the right to an evidentiary hearing. MCL 24.203(3). In a contested case, the rules of evidence are followed to the extent practicable. MCL 24.275. A final decision in a contested case must be in writing or stated in the record and must contain findings of fact and conclusions of law. MCL 24.285. The rules that afford a utility the opportunity to seek a waiver of penalty provisions do not deprive the utility of due process. *Bundo, supra.*

---

[9] A standard that does not satisfy the requirements of due process cannot be considered as reasonably precise as the subject matter requires or permits. See *State Hwy Comm v Vanderkloot*, 392 Mich 159, 169-178; 220 NW2d 416 (1974) (opinion by WILLIAMS, J.)

A central purpose of the CCERA is to ensure that customers are provided safe and reliable electric power. MCL 460.10(2)(d). The PSC's adoption of performance standards, as authorized by MCL 460.10p(5), furthers that purpose, as does its adoption of rules providing for automatic penalties in the event a utility fails to meet those standards. The rules establishing the performance standards require that a utility maintain detailed records,[10] and a utility's failure to comply with the performance standards can be determined by examining those records. The imposition of automatic penalties is not left to the unfettered discretion of the PSC. The PSC's enactment of rules providing for penalties is not an unconstitutional assumption of legislative power. *Seaman, supra.* The PSC's interpretation and application of MCL 460.10p(8) is reasonable, and thus is entitled to deference. *Champion's Auto Ferry, supra.*

### IV. CONCLUSION

The PSC orders adopting and approving rules providing for the imposition of automatic penalties for a utility's failure to comply with performance standards are lawful and reasonable, comply with the legislative intent of the enabling statutes, and are supported by the requisite evidence.

Affirmed.

---

[10] R 460.731 through 460.734.