# STATE OF MICHIGAN

# COURT OF APPEALS

BUREAU OF HEALTH CARE SERVICES,

UNPUBLISHED
March 12, 2015

Petitioner-Appellee,

v

No. 319150
Board of Dentistry
LC No. 12-000318

JASON JOHN ARMSTRONG, DDS,

Respondent-Appellant.

Before: JANSEN, P.J., and METER and BECKERING, JJ.

PER CURIAM.

Respondent, Jason John Armstrong, DDS, appeals as of right from the final order of the Department of Licensing and Regulatory Affairs, Bureau of Health Care Services, Board of Dentistry Disciplinary Subcommittee, placing him on probation for a minimum of one day, requiring him to complete specified continuing education, and fining him $5,000 for violating § 16221(a) (violation of general duty, consisting of negligence or failure to exercise due care) of the Michigan Public Health Code, MCL 333.1101 *et seq*. For the reasons stated below, we affirm.

## I. FACTS

On June 17, 2009, respondent first examined the patient in issue, ME, who was complaining of oral pain. Respondent observed a large radiolucency at the apex of ME's tooth # 14. Respondent concluded that a root canal ME had previously had "was failing and it needed treatment." Respondent treated tooth # 14's mesial buccal canal because, in respondent's estimation, that canal was problematic, but did not treat the distal buccal or the palatal canal because they did not have any radiolucency at the apex. On October 26, 2009, ME returned to respondent's office complaining of the same symptoms on tooth # 14. An x-ray showed that the radiolucency was still present, but respondent found that "it was slowly healing." Respondent testified that he advised ME to "just wait it out, adjust your bite and take it easy and sit tight." Respondent also told ME that he would be happy to refer ME to a specialist, but there would be an out-of-pocket expense for the consult, which ME did not want because he had already spent a considerable sum of money on the tooth. Respondent explained that the best option available to

-1-

ME that day was "to wait and . . . if . . . the symptoms persist, then go see a specialist to re-evaluate before we take the tooth out." In his records, however, respondent wrote, "hopeless prognosis – ext required."[1] "Ext" was shorthand for "extraction." Respondent explained that "[w]hat I put down in my notes is that if we take the tooth out, there would be a hopeless prognosis."

Dentist Edwin Sarkisian testified that on November 10, 2009, he treated ME and it was his impression that the canals in tooth # 14 had not been completely filled. He concluded that respondent's treatment of ME was not within the appropriate standard of care, explaining:

> The root canal treatment that [had been performed] was substandard and [did] not completely fill the canals. I think that his judgment in not referring the patient to a specialist to retreat it was incorrect. I believe that his judgment that the tooth was hopeless and not consulting a specialist was a violation of the [American Dental Association] standards of ethics and care. And in my estimation, the quality of the crown and the treatment was . . . below what I would accept.

ME was referred to endodontist Ronald Shoha, who concluded that there may be a fracture in the tooth or a canal perforation. He also found a mesial buccal canal ("MB2") which had been missed in previous treatments, which he treated. Dentist Michael Jennings testified that it was not below the minimal standards for respondent, a general dentist, to have initially missed this canal, but it was below the minimal standards for him not to have subsequently recognized that he had missed the MB2 canal after ME came back months later with some of the same symptoms of pain he had expressed earlier. He testified that when ME returned to respondent with similar symptoms in the same area with the radiolucency still present, respondent should have made a referral to a specialist rather than finding "extraction" as the only option.

Dentist David Borlas testified that in his opinion respondent did the appropriate tests, took the proper x-rays, and came to a reasonable diagnosis that the problem was some type of recurrent infection and/or abscess at the mesial buccal root. Regarding respondent's decision to re-treat only the mesial buccal root canal as opposed to all of the canals, Dr. Borlas opined that the decision was within the standard of care, explaining:

> [Everybody's] different, every situation is different. In this particular case, you have an obvious problem on one of the roots. Nothing else on either of the other two that you can see. . . .

---

[1] The record entry also indicated that the tooth was "not responding to RCT retreat," included the cost of extraction, and addressed RCT retreatment of tooth # 13 and a three-unit bridge to replace tooth # 14. The next chart entry indicated that on November 9, 2009, ME called the office seeking to have x-rays sent to Dr. Edwin Sarkisian and that "pt unhappy with prognosis of # 14 and TP."

Also, any time you mess around with a root canal, to retreat or anything, bad things can happen. You could break a file off down there, you could perforate, you could fracture the root. You could cause more problems . . . . So it's a judgment call each time. If I think this is okay, do I want to go in there and mess with it? Why don't we just address the thing I know is not okay and if [there are] problems, you can always go in those other canals, if you had to. So his decision, then, to just do the mesial buccal canal, given the circumstances . . . I think it's perfectly reasonable.

Dr. Borlas opined that respondent could not be responsible for the distal buccal canal perforation because respondent did not do anything in that canal. As to the missed MB2, Dr. Borlas said the x-ray showed that the radiolucency was still healing at the tip of the root and no new problems were evident. He explained that if the MB2 was causing the problem, the radiolucency would have gotten worse. Regarding whether he thought respondent should have referred ME to a specialist on October 26, 2009, Dr. Borlas indicated that if respondent discussed with ME the option of seeing a specialist and ME declined that option, respondent complied with the standard of care for a general dentist.

Following testimony, the administrative law judge (ALJ) concluded that "the majority of the issues asserted regarding [respondent's] treatment of ME" did "not support the determination of a Section 16221(a) violation." However, the ALJ found a violation "of general duty regarding the specific issue of indicating tooth # 14 to have a 'hopeless prognosis' circa October 2009." The ALJ explained:

> . . . [respondent's] testimony indicates that he advised M.E. in October 2009 to be patient and give the area more time to heal. [Respondent] was credible in his testimony that the radiolucency was smaller in October 2009. This Administrative Law Judge finds credible [respondent's] testimony that the possibility or a referral to a specialist was discussed with M.E. For all these reasons, it is a paradox that M.E.'s chart regarding tooth # 14 notes that there is a 'hopeless prognosis – ext required.' . . . While [respondent] indicated concern of possibilities such as a root fracture, it would appear premature at best to have noted the tooth as hopeless circa October 2009. The possibility of an MB2 had not been addressed. Additionally, the possibility that the [other canals that had not been re-treated] were potentially contributing to the patient's symptoms was at issue circa October 2009.

> As such, Petitioner has established a Count I violation of general duty regarding the treatment of M.E. The violation is narrowly focused on [respondent's] determination in the chart that the tooth had a hopeless prognosis and that extraction was to follow. No injury resulted from this diagnosis, as the tooth was not lost. However, the language of 16221(a) clearly indicates that a violation can occur "whether or not injury results." [Emphasis omitted.]

The Disciplinary Subcommittee accepted the ALJ's proposal for decision and imposed the penalties noted above. It is from this decision that respondent now appeals as of right.

## II.  STANDARD OF REVIEW

Appellate review of an agency's final decision, findings, rulings and orders regarding regulated professions is provided for and limited by Const 1963, art 6, § 28, which provides, in pertinent part:

> This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.

"A reviewing court may not set aside factual findings supported by the evidence merely because alternative findings could also have been supported by evidence on the record or because the court might have reached a different result." *Dep't of Community Health v Risch*, 274 Mich App 365, 373; 733 NW2d 403 (2007). Rather, the whole record must be reviewed to determine whether "competent, material and substantial evidence" supported the agency's action. Const 1963, art 6, § 28. See also *VanZandt v State Employees Retirement Sys*, 266 Mich App 579, 588; 701 NW2d 214 (2005). " 'Substantial evidence' is evidence that a reasonable person would accept as sufficient to support a conclusion. While this requires more than a scintilla of evidence, it may be substantially less than a preponderance." *Dowerk v Oxford Charter Twp*, 233 Mich App 62, 72; 592 NW2d 724 (1998). Further, an appellate court should give great deference to an agency's administrative expertise. *Huron Behavioral Health v Dep't of Community Health*, 293 Mich App 491, 497; 813 NW2d 763 (2011). "Moreover, if the administrative findings of fact and conclusions of law are based primarily on credibility determinations, such findings generally will not be disturbed because it is not the function of a reviewing court to assess witness credibility or resolve conflicts in the evidence." *Risch*, 274 Mich App at 372.

## III.  EXPERT TESTIMONY

Respondent contends that the Disciplinary Subcommittee's final order was not supported by competent, material and substantial evidence on the whole record because no expert testimony was presented to show that respondent was negligent or failed to exercise due care with respect to determining in ME's chart that tooth # 14 had a "hopeless prognosis – ext required."

MCL 333.16221 of the Public Health Code provides as follows:

> The department shall investigate any allegation that 1 or more of the grounds for disciplinary subcommittee action under this section exist, and may investigate activities related to the practice of a health profession by a licensee, a registrant, or an applicant for licensure or registration. The department may hold hearings, administer oaths, and order the taking of relevant testimony. After its investigation, the department shall provide a copy of the administrative complaint to the appropriate disciplinary subcommittee. The disciplinary subcommittee shall proceed under section 16226 if it finds that 1 or more of the following grounds exist:

(a) A violation of general duty, consisting of negligence or failure to exercise due care, including negligent delegation to or supervision of employees or other individuals, whether or not injury results, or any conduct, practice, or condition that impairs, or may impair, the ability to safely and skillfully practice the health profession.

Proceedings under the Public Health Code are governed under the Administrative Procedures Act, MCL 24.201 *et seq.*, and MCL 24.275 sets forth the rules of evidence in contested case hearings. In a contested case under the Administrative Procedures Act, "the rules of evidence are followed to the extent practicable." *Michigan Electric Coop Ass'n v Pub Serv Comm*, 267 Mich App 608, 623; 705 NW2d 709 (2005), citing MCL 24.275. In addition, "an agency may admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent men in the conduct of their affairs." MCL 24.275.

There was expert testimony sufficient to establish the standard of care and breach of that standard as to the note at issue. Dr. Sarkisian testified that respondent's judgment in not referring the patient to a specialist to retreat the tooth was incorrect, and that his judgment that the tooth was hopeless and not consulting a specialist was a violation of the American Dental Association (ADA) standard of ethics and care. In addition, Dr. Jennings stated that respondent's standard of care was to recognize, diagnose, inform the patient, and make the proper referral in case he was not able to correct the problem. Dr. Jennings testified that when ME returned to respondent with the similar symptoms in the same area with the radiolucency still present, respondent should have made a referral to a specialist rather than finding "extraction" as the only option.

Accordingly, the Disciplinary Subcommittee's decision is supported by competent, material and substantial evidence on the whole record. See *Risch*, 274 Mich App at 371-372.

## IV. INADEQUATE RECORDKEEPING

Respondent claims that the Disciplinary Subcommittee's final order was not supported by competent, material and substantial evidence on the whole record because even if expert testimony was offered as to the standard of care regarding respondent's "hopeless prognosis – ext required" entry, a failure to keep adequate records was not a breach of the standard of care.[2]

MCL 333.16213(1) provides that "[a]n individual licensed under this article shall keep and maintain a record for each patient for whom he or she has provided medical services,

---

[2] Respondent cites *Boyd v Wyandotte*, 402 Mich 98, 104-105; 260 NW2d 439 (1977) and *Zdrojewski v Murphy*, 254 Mich App 50, 64; 657 NW2d 721 (2002), contending that a health care professional's failure to keep adequate records is not a breach of the standard of care unless the failure contributes to the patient's injuries. Those cases are inapposite to the instant case. As the ALJ recognized, MCL 333.16221(a) specifies that a violation of the statute can occur regardless of "whether or not injury results[.]"

including a full and complete record of tests and examinations performed, observations made, and treatments provided." A pertinent question is whether noting an erroneous prognosis is a breach of the general standard of care under the statutory language. It could be argued that by noting "hopeless prognosis – ext required," respondent did keep and maintain a record for ME, including a full and complete record of observations made, and this did not violate the purpose of recordkeeping.

However, the problem with the notation is that it is not in accord with the advice given the patient. The ALJ found credible that respondent advised ME in October 2009 to be patient and give the tooth more time to heal, and that he discussed with ME the possibility of a referral to a specialist. As the ALJ characterized it, under these circumstances it was a "paradox" that ME's chart regarding tooth # 14 noted there was a "hopeless prognosis – ext required." Maintaining "a record for each patient . . . , including a full and complete record of . . . observations made[] and treatments provided" would be of little use if it does not accurately reflect those observations and treatments. We find no basis for overturning the Disciplinary Subcommittee's decision. See *Risch*, 274 Mich App at 371-372.

Respondent also cites to Mich Admin Code, R 338.11120(2), which, at the time of this action,[3] provided the following regarding a "dental treatment record":

The dental treatment records for patients shall include all of the following information:

(a) Dental procedures performed upon the patient, including the charting of all restorations, missing teeth, or other developmental deformities.

(b) The date the procedure was performed.

(c) Identity of the dentist or the dental auxiliary performing each procedure.

(d) The date, dosage, and amount of any medication or drug prescribed, dispensed, or administered to the patient.

(e) Radiographs taken in the course of treatment. If radiographs are transferred to another dentist, the name and address of that dentist shall be entered in the treatment record.

Respondent argues that because Rule 338.11120(2) does not require a dentist to record a patient's prognosis, his "hopeless prognosis" note in the dental treatment records cannot be a violation of the standard of care, and therefore, the Disciplinary Subcommittee's decision is not supported by competent, material, and substantial evidence.

---

[3] The rule was amended effective October 8, 2014. The amendments are not pertinent to this appeal.

Respondent's argument misunderstands the ALJ's decision. Regardless of what Rule 338.11120(2) required respondent to note in ME's chart, the ALJ was concerned with what respondent actually noted in ME's chart. The ALJ found that what respondent noted in ME's chart was incongruous with the advice given to ME, and that the characterization of the tooth as "hopeless" at the time he noted as much was a violation of the standard of care. As noted, this finding was supported by the testimony of Dr. Sarkisian and Dr. Jennings. And as discussed above, maintaining a patient record would be of little use if it does not accurately reflect the physician's diagnosis, prognosis, and medical condition, both for subsequent treatment and for determining whether a patient has been given accurate information. Again, on the entire record before us, we find no basis for overturning the Disciplinary Subcommittee's decision. See *Risch*, 274 Mich App at 371-372.

## VI. INTERPRETATION OF THE "HOPELESS PROGNOSIS" NOTE

Respondent also argues that the Disciplinary Subcommittee's final order was not supported by competent, material and substantial evidence on the whole record because the phrase "hopeless prognosis – ext required" was ambiguous and the interpretation of the phrase by the ALJ was speculative. Regarding the note, respondent testified as follows:

What I put down in my notes is that if we take the tooth out, there would be a hopeless prognosis. That would be if the . . . retreat root canal doesn't respond to . . . the healing that we needed . . . .

* * *

That day, the best option was to wait and . . . if . . . the symptoms persist, then go see a specialist to re-evaluate before we take the tooth out.

The ALJ heard respondent's testimony and concluded that the phrase's inclusion in ME's chart nevertheless meant that the tooth was hopeless at the time of the entry in ME's chart. We will not disturb the ALJ's resolution of respondent's testimony with the meaning of the notation in the chart. See *Risch*, 274 Mich App at 372. Further, we note that Dr. Sarkisian stated that respondent's judgment that the tooth was hopeless and not consulting a specialist was a violation of the ADA standard of ethics and care. Dr. Jennings also testified that respondent should have made the referral to a specialist on October 26, 2009 rather than finding "extraction" as the only option. Therefore, even if what respondent meant was that ME should wait to see if the symptoms persist, it was still premature for respondent to note on October 26, 2009 that extraction would be required. Accordingly, the ALJ's interpretation that it was premature at best for respondent to have noted that the tooth had a hopeless prognosis and that extraction was to follow was supported by substantial evidence.

Affirmed.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Jane M. Beckering