# STATE OF MICHIGAN

# COURT OF APPEALS

FORD MOTOR COMPANY,

    Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

    Defendant-Appellee.

UNPUBLISHED
May 29, 2018

No. 338784
Court of Claims
LC No. 16-000042-MT

Before: METER, P.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

Plaintiff, Ford Motor Company, appeals as of right the order of the Court of Claims denying its motion for summary disposition and granting summary disposition to defendant, Department of Treasury, under MCR 2.116(C)(10). We affirm.

## I. FACTS AND BACKGROUND

This case arises from plaintiff's request to defendant for a refund of tax paid under Michigan's Motor Fuel Tax Act (MFTA), MCL 207.1001 *et seq.* Plaintiff is engaged in the business of manufacturing and assembling motor vehicles. At the times relevant to this case, plaintiff manufactured the Ford F-150 at its Dearborn Truck Plant, and the Ford Focus and Ford Expedition at its Michigan Assembly Plant. As part of the manufacturing process, plaintiff purchased and stored gasoline that it then used to test and ship the vehicles. Plaintiff would partially fill the fuel tank of each newly manufactured vehicle with sufficient gasoline to allow plaintiff to test the vehicle and to move the vehicle from the assembly areas to the shipping areas, and to move the vehicle off the truck after shipping. The parties agree for purposes of this case that the vehicles in question were shipped to only non-Michigan destinations, and that the gasoline in question was not used to drive the vehicles on Michigan roads or highways.

The MFTA imposes a tax on motor fuel "imported into or sold, delivered, or used" in this state. MCL 207.1008(1)(a); *AutoAlliance Int'l, Inc v Dep't of Treasury*, 282 Mich App 492, 499; 766 NW2d 1 (2009). The purpose of the tax is to "require persons who operate a motor vehicle on the public roads or highways of this state to pay for the privilege of using those roads or highways." MCL 207.1008(5)(a); *AutoAlliance*, 282 Mich App at 499. In light of that purpose, the act permits a person to seek a refund of the tax paid when the fuel was used for a nontaxable purpose. MCL 207.1108(5)(c); *AutoAlliance*, 282 Mich App at 499.

-1-

Plaintiff sought a refund of tax paid under the act for the gasoline used to test and ship its Ford Escorts, F-150 trucks, and Expeditions to destinations outside Michigan. Plaintiff submitted two motor fuel tax refund claims for tax paid on the gasoline during the two tax periods in question, being September 2, 2008, to December 22, 2009, in the amount of $619,898.94, and January 1, 2010, to December 31, 2010, in the amount of $427,935.86. Initially, plaintiff asserted to defendant that for the relevant time periods it put seven gallons of fuel in each newly manufactured vehicle in question, and therefore sought a refund for the tax paid on seven gallons of gasoline for each vehicle it manufactured and shipped to other states during the relevant time periods.

Defendant denied plaintiff's request for refunds exceeding the amount of 3.2 gallons per vehicle. In response to defendant's denial, plaintiff requested an informal conference before defendant's hearing referee. At the informal conference, defendant asserted that it would not refund tax paid for more than 3.2 gallons per vehicle unless plaintiff could substantiate its claim for a greater amount. Defendant's hearing referee permitted plaintiff additional time to demonstrate the amount of fuel used, explaining that "affidavits from engineers at the assembly plants would suffice." Plaintiff did not provide affidavits, but thereafter submitted a letter that essentially advised the referee that plaintiff relied on the information and documentation previously submitted. The referee recommended that plaintiff's requests be denied, and defendant thereafter denied plaintiff's refund claims.

Plaintiff then initiated this action before the Court of Claims seeking the denied refunds.[1] In its complaint, plaintiff alleged that its refund request to defendant stated that it had placed four gallons of fuel in each new Focus, eight gallons of fuel in each new F-150, and ten gallons of fuel in each new Expedition. Plaintiff later amended its complaint before the Court of Claims to allege that plaintiff had placed seven gallons of fuel in each Ford F-150 during the applicable periods.[2] After limited discovery before the Court of Claims, both parties moved for summary disposition under MCR 2.116(C)(10). Plaintiff claimed entitlement to summary disposition, arguing that it had provided sufficient information to substantiate the refund claims. Plaintiff

---

[1] We note that § 22 of the revenue act, MCL 205.22, gives a taxpayer aggrieved by a "decision" of the Treasury Department the right to "appeal" the decision either to the Court of Claims or to the Michigan Tax Tribunal. In this context, however, the Court of Claims conducts its review in the manner of an original action before that court, rather than as an appeal. MCL 205.22(3) also provides for an appeal as of right from the decision of the Court of Claims to this Court, suggesting that the proceedings before the Court of Claims from a decision of the Treasury Department are in the nature of an original action and not an "appeal," though deemed as such by the revenue act. In any event, the Court of Claims disposed of this case on the parties' motions for summary disposition, which we review on appeal de novo.

[2] Plaintiff's affiant also amended the supporting affidavit to reflect the change from eight to seven gallons of fuel in each Ford F-150 during the applicable period.

-2-

supported its motion with affidavits[3] attesting to the amounts of gasoline used in the vehicles, being four gallons for each Ford Escort, *seven* gallons for each Ford F-150, and 10 gallons for each Ford Expedition. Plaintiff also provided the Court of Claims with a copy of a sample computer screen shot of a fuel specification form from 2015 that directed plaintiff's employees to place seven gallons into each newly manufactured Ford F-150. By contrast, defendant contended that it was entitled to summary disposition because plaintiff had failed to adequately substantiate its claimed refund because it did not provide fuel specification sheets or other documentation verifying how much fuel was placed into each vehicle model during the relevant tax periods. Plaintiff explained that it no longer retained the computer fuel specification forms for the periods in question.

The Court of Claims granted defendant's motion for summary disposition, while denying plaintiff's motion. The court held that plaintiff was obligated under the MFTA to substantiate how much gasoline it had placed in each vehicle and had failed to do so because it did not provide the documentation defendant requested. Plaintiff now appeals.

## II. ANALYSIS

Plaintiff first contends that the Court of Claims erred by denying its motion for summary disposition and granting defendant's motion for summary disposition because plaintiff provided information that substantiated its refund claims and therefore complied with the statutory requirements of MCL 207.1048. We disagree.

We review de novo a trial court's grant or denial of summary disposition. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). A motion pursuant to MCR 2.116(C)(10) tests the factual support of a plaintiff's claim, and is reviewed by considering the pleadings, admissions, and other evidence submitted by the parties in a light most favorable to the nonmoving party. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). Summary disposition is appropriate if there is "no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. A genuine issue of material fact exists when "reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). We also review de novo the proper interpretation of statutes, such as the MFTA. *AutoAlliance*, 282 Mich at 499.

During the tax periods relevant to this case, persons who operated motor vehicles on the public roads and highways in Michigan were required to pay a tax of 19 cents per gallon on motor fuel. MCL 207.1008. The tax was collected by the fuel supplier pursuant to MCL 207.1008(5)(b), and remitted to the state. Persons who paid the tax but used the fuel they purchased for nontaxable purposes could seek a refund. In that regard, MCL 207.1008(5)(c) provides:

---

[3] The affidavits were from the Government Regulations Coordinator at plaintiff's Dearborn Truck Plant, the Government Regulations Coordinator at plaintiff's Michigan Assembly Plant, and plaintiff's Manager of Indirect Taxes.

(5) It is the intent of this act:

\* \* \*

(c) To allow persons who pay the tax imposed by this act and who use the fuel for a nontaxable purpose to seek a refund or claim a deduction as provided in this act.

Similarly, MCL 207.1032 provides:

If a person pays the tax imposed by this act and uses the motor fuel for a nontaxable purpose as described in sections 33 to 47, the person may seek a refund of the tax. To obtain a refund, the person shall comply with the requirements set forth in section 48.

Section 33 of the act, MCL 207.1033, permits a taxpayer who is an "end user" to seek a refund for tax paid on motor fuel used by the person for nonhighway purposes. An "end user" is "the party who uses the fuel to power the motor vehicle into which the fuel was placed." *DaimlerChrysler Corp v Dep't of Treasury*, 268 Mich App 528, 536; 708 NW2d 461 (2006).

In this case, defendant does not dispute that plaintiff is an "end user" within the meaning of the statutory provisions. Rather, defendant contends that plaintiff failed to substantiate its claimed refund under MCL 207.1048. To obtain a refund under the MFTA, the taxpayer must comply with the requirements of MCL 207.1048. *AutoAlliance*, 282 Mich App at 499. MCL 207.1048 provides, in relevant part:

(1) In order to make a refund claim under this act, a person shall do all of the following:

(a) File the claim on a form or in a format prescribed by the department.

(b) Provide the information required by the department including, but not limited to, all of the following:

(*i*) The total amount of motor fuel purchased based on the original invoice unless the department waives this requirement.

(*ii*) The total amount of tax paid.

(*iii*) A statement that the fuel was used for an exempt purpose or by an exempt user.

(*iv*) A statement that the fuel was paid for in full.

(*v*) A statement printed on the form that the claim is made under penalty of perjury.

(c) Comply with any specific requirement described in sections 32 to 47.

-4-

(d) Sign the claim.

(e) File the claim not more than 18 months after the date the motor fuel was purchased.

* * *

(3) The department may make any investigation it considers necessary before refunding tax paid under this act to a person but in any case may investigate a refund after the refund has been issued and within 4 years from the date of issuance of refund.

The parties disagree regarding whether plaintiff satisfied the substantiation requirements of MCL 207.1048 with respect to the amount of fuel placed in each vehicle for which plaintiff requested a refund. As the Court of Claims correctly stated, the issue in this case is "whether [plaintiff] is entitled to a refund of motor fuel tax based on the gallons of fuel it actually purchased for exempt use in newly assembled vehicles, or whether it has failed to adequately substantiate its claim, thereby limiting it to a refund based on [defendant's] standard allowance of 3.2 gallons of fuel per vehicle."

Before the Court of Claims, defendant argued that to substantiate the amount of fuel, it required plaintiff to provide its computer fuel specification sheets or other documentation verifying how much fuel was placed in the specific vehicle models during the relevant tax years. Plaintiff asserted that it was unable to provide the fuel specification sheets because it no longer retained those documents. In lieu of the fuel specification sheets, plaintiff submitted affidavits from two of its Government Regulations Coordinators and its Manager of Indirect Taxes, attesting to the amount of fuel placed in each vehicle.

Notwithstanding the affidavits, the Court of Claims concluded that defendant was entitled to summary disposition because plaintiff had not provided the fuel specification sheets required by defendant. The Court of Claims reasoned:

A plain reading of MCL 207.1048 makes clear that the Legislature gave the Department the authority to establish what documentation is required before a taxpayer can be issued a refund under the MFTA, "including, but not limited to," the items enumerated in the statute. That the Legislature intended to give the Department wide latitude in determining whether a taxpayer has met its burden of substantiation is also made clear in the statutory language stating that the Department has the authority to make "any investigation it considers necessary before refunding tax paid under this act . . . ." As the Department correctly points out, the statute clearly allows it to require specific documentation of Ford pertaining to the fuel requirements of the particular vehicle models during the tax years at issue. While it is evident from the record that Ford may have had the proper documentation to support its full refund claim at some point in time, it has been unable to produce the required documentation and, therefore, did not satisfy its burden of substantiation. [(footnote omitted).]

Plaintiff argues that in reaching this conclusion, the Court of Claims misinterpreted the MFTA because MCL 207.1048 cannot be read to permit defendant to determine what evidence substantiates a refund claim. We disagree. MCL 207.1048(3) specifically grants defendant authority to investigate a refund claim to the extent it considers necessary before refunding tax paid under the MFTA. Similarly, MCL 207.1048(1)(b), specifically requires a taxpayer seeking a refund to provide defendant "[t]he information required by the department." MCL 207.1048(1)(b). We conclude that the statute thereby permits defendant to require substantiation to support plaintiff's assertion regarding how much fuel it placed in each vehicle in question, and necessarily, to determine what documentation is adequate for substantiation. Moreover, plaintiff also failed to produce sufficient evidence to substantiate its claims before the Court of Claims. Ostensibly, plaintiff previously had within its possession the documentation necessary to substantiate its claims for a greater refund, but admits that it failed to retain the documentation, and therefore was unable to submit the documentation either to defendant or to the Court of Claims. Plaintiff therefore proffered to the Court of Claims the affidavits of its employees in support of its refund claims. The Court of Claims, however, was not obligated to accept the affidavits as dispositive on the issue of substantiation, particularly given the shifting nature of the claimed refund amount. There can be no genuine issue of fact that Ford failed to substantiate its refund claim in a manner reasonably required by the department as part of its statutorily authorized investigation of Ford's refund request in this case. MCL 207.1048(1)(b) and (3).

Plaintiff argues, however, that the Court of Claims' interpretation of MCL 207.1048 means that the Legislature violated the principle of separation of powers by delegating its powers to defendant. We disagree. Although the Legislature cannot delegate its powers, the Legislature can enact a law that delegates authority sufficient to effect the efficient administration of legislative policy. *Michigan Elec Coop Ass'n v Michigan Public Serv Comm*, 267 Mich App 608, 622; 705 NW2d 709 (2005). The guiding factors for evaluating a claim that the Legislature unconstitutionally delegated authority, are (1) the act in question must be read as a whole, (2) the standard in question should be as reasonably precise as possible given the subject matter, and noting that the required precision will change with the complexity of the subject matter and the level of regulation, and (3) if possible, the statute must be construed as validly conferring administrative power with discretionary authority, as opposed to conferring legislative power or arbitrary authority. *Id*., citing *Dep't of Natural Resources v Seaman*, 396 Mich 299, 308-308; 240 NW2d 206 (1976).

In this case, reading MCL 207.1048 in context leads to the conclusion that the MFTA conferred administrative, not legislative, authority upon defendant and provides constitutionally sufficient standards to guide defendant in the exercise of the discretion conferred upon it to determine the evidentiary proof necessary to carry out its task of determining refund requests under the act. MCL 207.1048 enumerates the general information that a taxpayer must produce to obtain a refund, but does not limit defendant's ability to carry out the administrative tasks of investigating and determining substantiation of a refund request. Because the Legislature could not have specified with particularity the evidence or documentation necessary in every conceivable scenario, the MFTA of necessity delegated that administrative function to defendant. See *In re Application of Michigan Elec Transmission Co*, 309 Mich App 1, 20-21; 867 NW2d 911 (2015). Reading the MFTA as a whole, and affording it the presumption of constitutionality, *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 36; 703 NW2d 822 (2005), we conclude that the MFTA, as interpreted by the Court of Claims in this case, does not violate the principle of separation of powers.

We similarly reject plaintiff's contention that the MFTA, as applied in this case by the Court of Claims, violates due process. Plaintiff argues that the MFTA, as applied by the Court of Claims' decision, deprived it of fair notice of the requirements of the statute and also deprived it of meaningful review of defendant's decision denying the refund request. We disagree. Both the United States Constitution and the Michigan Constitution prohibit the government from depriving a person of life, liberty, or property without due process of law. US Const Am XIV; Const 1963, art 1, § 17. To determine a claim alleging lack of procedural due process, we inquire whether a liberty or property interest exists that has been interfered with by the state and whether constitutionally sufficient procedures were employed in that interference. *Galien Twp School Dist v Dep't of Educ*, 310 Mich App 238, 241; 871 NW2d 382 (2015). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *By Lo Oil Co*, 267 Mich App at 32 (quotation marks and citation omitted).

In this case, we conclude that plaintiff has a property interest in its requested tax refund, but further conclude that constitutionally sufficient procedures were employed in denying plaintiff's refund request. Here, plaintiff had an opportunity for informal proceedings before defendant, then review by the Court of Claims. Defendant's expectation that plaintiff would substantiate its claim with documentation did not deprive plaintiff of "notice;" plaintiff's statutory obligation to substantiate its claim in order to obtain the requested refund is apparent in the statute. Similarly, plaintiff was not denied the opportunity to be heard. The record in this case establishes that defendant afforded plaintiff an opportunity to challenge its decisions regarding plaintiff's motor fuel tax refund claims. Defendant conducted an informal conference during which it afforded plaintiff ample opportunity to submit substantiating documentation from the relevant tax periods. Plaintiff again had the opportunity to submit substantiating documentation from the relevant tax periods to the Court of Claims. Review of the record indicates that plaintiff could not proffer substantiating documentary evidence from the relevant tax periods solely because it had failed to retain such documents under its document retention protocols.

We also reject plaintiff's contention that the decision of the Court of Claims is inconsistent with the APA. The proceeding before defendant in this case was an "informal conference" under MCL 205.21. Plaintiff sought review of defendant's decision by initiating this action in the Court of Claims as permitted under § 22 of the Revenue Act, MCL 205.22, which permits a taxpayer aggrieved by a decision of defendant to appeal the decision to the Court of Claims or to the Michigan Tax Tribunal. The APA, which applies to review of a "contested case" under that act, therefore is not applicable here. See *Blue Cross and Blue Shield of Mich v Comm of Ins*, 155 Mich App 723, 729; 400 NW2d 638 (1986) (the APA governs review of administrative decisions when a litigant seeks judicial review under the method provided by the APA); see also *Morales v Michigan Parole Board*, 260 Mich App 29, 36; 676 NW2d 221 (2003) (only a "contested case" is appealable under the APA).

In summary, we hold that the Court of Claims properly applied the plain language of MCL 207.1048. Defendant had discretionary authority under MCL 207.1048(1)(b) to require that plaintiff provide substantiating evidence beyond the minimum information required by MCL 207.1048(1)(b)(*i*)-(*v*) for the relevant tax periods, and the Court of Claims did not err by concluding that defendant could require specific substantiating documentary evidence as proof of plaintiff's refund claims. We are thus unconvinced that the Court of Claims erred in concluding

that plaintiff failed to substantiate its claims for refund by failing to provide the documentation required by defendant to support its claim. In so concluding, we do not suggest that defendant's authority to require information from a taxpayer seeking a refund intrudes upon the authority of the Court of Claims to review the agency's actions, or that the department's authority to investigate a refund claim is unfettered. Our de novo review of the record in this case, however, supports the conclusion of the Court of Claims that the evidence presented by plaintiff was insufficient to support its entitlement to a refund beyond defendant's determination of 3.2 gallons per vehicle. The Court of Claims therefore properly granted summary disposition for defendant and properly denied summary disposition for plaintiff.

Affirmed.


/s/ Patrick M. Meter
/s/ Michael F. Gadola
/s/ Jonathan Tukel